**GREAT NORTHERN INSURANCE COMPANY, a Minnesota corporation, Plaintiff,**

v.

**THE BENJAMIN FRANKLIN FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

**CV No. 89–213–PA.**

United States District Court, D. Oregon.

March 12, 1990.

Kenneth E. Roberts, Jay T. Waldron, David E. Prange, Schwabe, Williamson & Wyatt, Portland, Or., for plaintiff.

Gordon L. Osaka, Portland, Or., for defendant.

## OPINION

PANNER, District Judge.

Plaintiff, Great Northern Insurance Co. (Great Northern), brings this declaratory judgment action against defendant Benjamin Franklin Federal Savings & Loan Association (Benjamin Franklin). The dispute centers on whether the property and liability insurance policies that Great Northern issued to Benjamin Franklin cover costs related to asbestos removal and lost rental income from Benjamin Franklin's commercial building.

The parties filed cross-motions for summary judgment. At oral argument, they agreed there are no material facts in dispute and that I can resolve the case finally based on stipulations and briefs.

After the summary judgment motions were filed, Benjamin Franklin moved for leave to file an amended counterclaim for fraud. I denied that motion for two reasons. First, the proposed counterclaim failed to meet the standards of particularity for pleading fraud under Fed.R.Civ.P. 9(b). Second, the alleged fraud concerned Great Northern's representations to Benja-

min Franklin that the insurance policies in dispute were "all risk" rather than "named peril" policies. I found that even if Benjamin Franklin could prove the alleged misrepresentations took place, that fact is not sufficient to state a claim for fraud. The language of the insurance policies controlled, not the labels attached to them.

Benjamin Franklin filed a second motion for leave to file an amended counterclaim. The second proposed counterclaim was much more specific and detailed than the first, but still failed to allege anything more substantive than the first proposed amended counterclaim. I denied the motion.

This opinion constitutes my findings of fact and conclusions of law as required under Fed.R.Civ.P. 52(a). I grant judgment for Great Northern.

## FACTUAL BACKGROUND

### I. HISTORY OF THE CLAIMS UNDER THE INSURANCE POLICIES

In 1962, Equitable Savings and Loan built an office building (Willamette Building) in Eugene, Oregon. Insulating material specified for and put into the building during construction contained asbestos.

In 1982, Benjamin Franklin bought the Willamette Building. In March, 1987, Benjamin Franklin leased the building to Centennial Mortgage Company (Centennial) for a five-year term. The lease required Centennial to maintain all-risk insurance on the building and name Benjamin Franklin as an additional insured. Centennial did not obtain this insurance. Centennial occupied the building in April, 1987.

During remodelling, Centennial discovered the asbestos and demanded that Benjamin Franklin immediately remove it. Centennial notified Benjamin Franklin that it would vacate the building unless the asbestos were removed. Centennial demanded a refund of prepaid rent and property taxes, and reliance damages. After Centennial and Benjamin Franklin were unable to agree about the asbestos removal and payment of damages, Centennial vacated the building in March, 1988. Centennial demanded damages of $36,714.

Benjamin Franklin had a property and liability insurance policy on the Willamette Building, issued by Great Northern. The policy was in effect from December 31, 1985 until December 31, 1987. On April 27, 1988, Benjamin Franklin sent Great Northern a proof of loss under the property insurance policy for anticipated removal of the asbestos, loss of use, and related expenses. Benjamin Franklin also tendered defense of Centennial's claim for damages to Great Northern.

On August 12, 1988, Benjamin Franklin and Centennial settled their dispute by agreeing to a payment of $6,250 to Centennial, rescission of the lease, and a mutual release of claims. On August 29, 1988, the Lane County Oregon Board of Equalization reduced the fair market value of the Willamette Building from $526,470 to $321,470. On February 24, 1989, Great Northern denied Benjamin Franklin's claim, contending that there was no coverage. Great Northern filed this action for a declaratory judgment the following week.

### II. RELEVANT TERMS OF THE INSURANCE POLICIES

#### A. Property Insurance Policy

The property insurance policy on the Willamette Building includes a number of provisions at issue. First, the general coverage provision says in pertinent part:

We will pay for loss you incur.... The loss must ... *result from a direct physical loss or damage by a Covered Cause of Loss.* (emphasis supplied).

"Covered cause of loss" is "direct physical loss or damage ... except as stated in Limitations or Exclusions." The exclusions provision expressly lists "Contaminants or Pollutants" as follows:

Release, discharge or dispersal of pollutants *unless* the release discharge or dispersal is itself caused by any of the *named causes of loss* (emphasis supplied).

"Pollutants" means "any solid, liquid, gaseous or thermal irritant, including smoke,

vapor, soot, fumes, acids, alkalis, chemicals and waste." "Waste" includes "materials to be recycled, reconditioned or reclaimed."

"Named causes of loss" are: "aircraft or self-propelled missiles, explosion, fire or lightning, sprinkler leakage, mine subsistence; riot or civil commotion; sinkhole; collapse; smoke; vandalism; vehicles; volcanic action; or wind or hail."

The policy includes a provision for debris removal:

> Debris removed coverage means your expense to remove debris of covered property from the premises stated in the declarations caused by or resulting from a covered cause of loss that occurs during the policy.

The policy excludes coverage for loss from the following governmental actions:

1. Seizure or destruction of property by order of governmental authority;

2. Any direct or indirect loss that results from governmental action even if the resulting loss would be otherwise covered; or

3. Any such direct or indirect loss or damage caused by, resulting from, contributing to or made worse by acts or decision or planning, design, materials or maintenance.

### B. Liability Insurance Policy

Benjamin Franklin also had a liability insurance policy issued by Great Northern. The general coverage provision says in pertinent part:

> We will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of: bodily injury or property damage caused by an occurrence ... to which this insurance applies, including but not limited to ... property damage ... arising out of:
>
> . . . . .
>
> (3) any property ... which you own and lease to others, when due to error or omission specific insurance which would customarily protect your interest, described in the lease agreements

accepted by you from lessees, is non-existent....

The exclusions provision includes "pollution" as follows: This insurance does not apply to:

. . . . .

### POLLUTION

1. bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants....

a. at or from property you own, rent or occupy *or is leased or rented from you;*

. . . . .

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reclaimed, or reconditioned.

Also excluded is damage to property that the insured owns.

### LEGAL STANDARDS

 Oregon principles of insurance policy construction apply in this case. *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276, 280 (9th Cir.1986). Insurance policies are construed as ordinary business contracts. *Perez v. State Farm Ins. Co.*, 289 Or. 295, 299, 613 P.2d 32 (1980). If an insurance policy is ambiguous, it is construed most favorably to the insured. *State Farm Mutual Automobile Ins. Co. v. White et al.*, 60 Or.App. 666, 672, 655 P.2d 599 (1982), *rev. denied*, 294 Or. 569, 660 P.2d 683 (1983).

 Construction of an insurance contract is a matter of law for the court. *May v. Chicago Insurance Co.*, 260 Or. 285, 292, 490 P.2d 150 (1971) (citations omitted). However, if the contract language is ambiguous, or if technical words, terms of art or local phrases must be interpreted, there is a question of fact for the jury to determine the intention of the parties. *Id.* at 293, 490 P.2d 150 (citations omitted).

## DISCUSSION

Both parties take a shotgun approach to the case. The volume of their briefs alone suggest the matter is extremely complex. To the contrary, the dispute is straightforward matter of contract interpretation, that hinges on whether asbestos is a "pollutant" under the insurance policies.

## I. COVERAGE UNDER THE PROPERTY INSURANCE POLICY

■ The threshold question is whether the Willamette Building sustained a "direct physical loss" within the terms of the property insurance policy. The policy itself contains no express definition of "direct physical loss". The most helpful case in defining "direct physical loss" is *Wyoming Sawmills v. Transportation Insurance Company*, 282 Or. 401, 578 P.2d 1253 (1978). In *Wyoming Sawmills*, a lumber manufacturer brought an action against its insurer under a general liability policy to recover labor expenses for removing and replacing defective 2″ × 4″ studs it had manufactured, which were used in a building.

The liability policy in *Wyoming Sawmills* used the term "physical injury" to describe coverage. At issue was whether this language was intended to include "consequential or intangible damages such as depreciation in value, within the terms property damage." The court answered "no". *Id.* at 406, 578 P.2d 1253. It reasoned that use of the word "physical" could only have been intended to exclude such coverage. *Id.*

Benjamin Franklin attempts to distinguish *Wyoming Sawmills* as a liability policy case, and not a property policy case. That distinction is meaningless. The *Wyoming Sawmills* holding was not dependent on the purpose of the insurance contract. The court was merely interpreting insurance contract using general principles of construction.

In this case, the policy language is even more specific than the language in *Wyoming Sawmills*. It uses the term *"direct* physical loss". There is no evidence here of *physical* loss, direct or otherwise. The building has remained physically intact and undamaged. The only loss is economic. The policy, by its own terms, covers only direct physical loss. The inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, non-physical losses.

■ Even assuming the asbestos is a direct physical loss, it is not a covered loss. The policy covers direct physical loss or damage resulting from a "covered cause of loss". A "covered cause of loss" is defined as direct physical loss or damage, except as excluded or limited. "Pollution" is expressly excluded, and includes solid irritants. Asbestos is a solid irritant.

The policy does cover damage from pollutants if they are released, discharged or dispersed by a "named cause of loss". There are twelve named causes of loss: 1) aircraft; 2) explosion; 3) fire or lightning; 4) sprinkler leakage; 5) mine subsistence; 6) riot; 7) sinkhole; 8) smoke; 9) vandalism; 10) vehicles; 11) volcanic action; and 12) wind or hail. None of these named causes of loss even arguably caused a release, discharge or dispersal of the asbestos.

Benjamin Franklin contends that the policy is strikingly similar to an "all risk" policy. Under an "all risk" policy, Benjamin Franklin argues, it must only show a fortuitous loss not caused by its own misconduct or fraud, and not otherwise excluded. This is a hollow argument based entirely on a characterization, rather than a reading of the policy. Even if the policy is an "all risk" policy, Benjamin Franklin ignores the fact that an "all risk" policy is still subject to express exclusions. There is no need to characterize the policy either as "all risk" or "named cause of loss" unless the exclusions are ambiguous. I find that the definition of "pollutant" unambiguously includes asbestos.

■ I also find no coverage under any other provision of the policy. The debris removal provision covers the costs of debris removal only when made necessary by a named cause of loss. No named cause of loss is involved here.

Similarly, the governmental action provision does not apply. It expressly excludes "any direct or indirect loss that results from governmental action even if the resulting loss is otherwise covered" and "direct or indirect loss or damage caused by, resulting from, contributing to or made worse by acts or decision or planning, design, materials or maintenance". Any argument that the policy covers the diminution in assessed value due to the asbestos is without merit. Even indirect loss due to governmental action, or resulting from governmental approval of the use of asbestos is expressly excluded.

In summary, there is no "direct physical loss" from the discovery of asbestos insulating material in the Willamette Building. Even if there is, the costs of asbestos removal are expressly excluded from coverage because asbestos is a "pollutant" within the meaning of the policy. Even if asbestos is considered "debris" within the meaning of the policy, the costs of removal are not covered because no named cause of loss made removal of the debris necessary. Finally, there is no coverage for governmental action involved because the policy broadly and unambiguously excludes both direct and indirect loss caused by governmental action.

## II. COVERAGE UNDER THE LIABILITY POLICY

█ The threshold question is whether the liability policy even arguably applies, because the policy expressly excludes coverage for damage to property owned by the insured, and there is no dispute that Benjamin Franklin owns the Willamette Building. Benjamin Franklin argues that Centennial's leasehold is the property at issue under the liability policy, not Benjamin Franklin's ownership interest.

This argument strains the language of the policy to the outermost limit. However, if I construe the policy in favor of Benjamin Franklin, it is at least arguable that the policy could cover damage to a third party's leasehold interest.

Benjamin Franklin's argument again rests on characterizing the policy as an "all risk" policy. As above, I need not consider that characterization unless the policy language is ambiguous. It is not.

The liability policy expressly excludes coverage for "pollution". That exclusion is even broader than the property policy exclusion, because it excludes damage arising out of the *actual, alleged, or threatened* discharge, dispersal, release, or escape of pollutants (emphasis supplied). The liability policy, as the property policy, specifically defines pollutants as any solid, liquid, gaseous, or thermal *irritant or contaminant,* including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. (Emphasis supplied). Waste includes materials to be recycled, reclaimed, or reconditioned. Not only does the policy exclude direct physical loss resulting from pollution, but it excludes "bodily injury or property damage arising out of the actual ... or *threatened* discharge, dispersal, release or escape, of pollutants ... *at property rented from the insured*" (emphasis supplied).

I have already decided that asbestos is a solid irritant. It is also a contaminant within the meaning of the policy. I find that the liability policy unambiguously excludes coverage for claims arising from the asbestos at the property rented from Benjamin Franklin. I need not address whether there is legal "liability" under the policy and whether a proper proof of loss was filed.

## CONCLUSION

Both the property insurance and liability insurance policies unambiguously exclude coverage for costs related to asbestos in the Willamette Building and Centennial's claims arising from discovery of the asbestos. I find for plaintiff. Plaintiff may submit a form of judgment for my approval within 20 days.