**Mark M. WHITAKER and Ingrid P. Whitaker, Plaintiffs,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendants.**

**No. Civ.A. 2:99CV994.**

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 19, 1999.

John S. Norris, Jr., Norris & St. Clair, P.C., Virginia Beach, VA, for Plaintiffs.

Douglas Alan Scott, Durrette, Irvin & Bradshaw, Robert Tayloe Ross, Durrette, Irvin & Bradshaw, P.C., Richmond, VA, for Defendants.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court on Defendant Nationwide Mutual Fire Insurance Company's ("Nationwide") motion for summary judgment, Plaintiffs' cross motion for summary judgment, and Defendant's motion to strike Plaintiffs' motion for summary judgment.

Plaintiffs Mark and Ingrid Whitaker have brought this suit for declaratory judgment seeking a declaration of amounts allegedly owed to them by Defendants under their homeowner's insurance policy (the "Policy"). Plaintiffs allege in their Bill for Declaratory Judgment that they hired a general contractor, Robinson, to construct the insured premises, and that Robinson defectively constructed the premises. They claim that, under the Policy, Defendants owe them the costs necessary to repair the defective workmanship itself and the damage to the premises resulting from the defective workmanship. They further allege that their first "loss" under the policy occurred on August 4, 1998, when they made the first payment to Terry Builders to begin to repair the premises.

Defendant Nationwide has moved for summary judgment declaring that it is not liable under the policy. Plaintiff has also moved for summary judgment and Defendant has moved to strike Plaintiff's motion for summary judgment.

The Court held a hearing on November 16, 1999. Based on the memoranda, evidence, and oral argument, Defendant's motion for summary judgment is **GRANTED.** Plaintiffs' motion for summary judgment is **DENIED.** Defendant's motion to strike is **MOOT.**

### I. FACTUAL AND PROCEDURAL HISTORY

The undisputed facts are as follows:

On August 4, 1995, Plaintiffs entered into a contract with Robinson, a general contractor, for the construction of a dwelling described as 29 River Point South, Portsmouth, Virginia (the "Premises"). Plaintiffs obtained an "all-risks" homeowner's insurance policy for the Premises from Defendant Nationwide. The policy became effective on August 21, 1995, Plaintiffs canceled the Policy on January 14, 1997.[1] Plaintiffs became dissatisfied with the quality and workmanship of Robinson's construction and made a claim under Robinson's contractor's insurance contract on

---

1. The letter from Plaintiff Mark Whitaker canceling the Policy refers to policy number 53 45 HO 112683, while all other documents and letters refer to the policy number originally issued, 53 HO 080–196. Defendants state in their brief that policy 53 HO 080–196 was replaced by policy 53 HO 112–683 on January 31, 1996. Plaintiffs do not dispute this or dispute that the cancellation letter applies to the same policy as all the other documents.

or about March 26, 1997.[2] Defendant Nationwide was also the insurer of Robinson. In response to the Robinson claim, Defendant sent Leavitt, an architect/engineer, to the Plaintiffs' property on May 27, 1997. In June 1997, during the course of a conversation with Nationwide agent Woody Marks, Plaintiff asked whether his former Nationwide homeowner's policy would cover the damages to the Premises. Agent Marks replied that it would not. Leavitt issued a report summarizing the damages to Plaintiffs' home on July 18, 1997. The report documents defects in the construction of the premises and notes that Plaintiffs' complaints are primarily concerned with the quality of the workmanship of the Premises.

Plaintiffs subsequently hired Terry Builders to make the necessary repairs to the premises. Plaintiffs made their first payment to Terry Builders on August 4, 1998.

On February 12, 1999, Plaintiffs' attorney wrote to Jeff Creef, an agent of Nationwide, regarding the damages to Plaintiffs' Premises. The letter states that Plaintiffs instituted suit against Robinson, but that Robinson has "sought relief under the Bankruptcy Act." The letter further states that Nationwide was placed on notice of the Plaintiffs' claims in 1997 and refers to the Leavitt report. The letter demands payment under the policy and attaches a list breaking down the damages.

Plaintiffs' attorney received a letter from Nationwide, undated but referencing a February 18, 1999 letter, regarding Nationwide's investigation of Plaintiffs' claims. The heading of the letter, after listing the names and addresses of the insured and the policy numbers at issue, states "Date of Loss: Reported 3/25/97."

This action was commenced on June 4, 1999, in state court. Defendants removed the action to federal court on June 24, 1999. On November 4, 1999 the Court heard oral argument on the summary judgment motions. The Court has thoroughly reviewed all the evidence and memoranda submitted. Thus, the matter is ripe for judicial determination.

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must view the facts and inferences to be drawn from the facts in the light most favorable to the nonmoving party. *See id.* at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

## III. DISCUSSION

### A) Policy coverage—"Direct Physical Loss"

 Defendant argues that it is entitled to summary judgment because Plaintiffs' loss is not covered by the Policy. Plain-

---

2. Plaintiffs also instituted suit against Robinson.

tiffs' Policy states that it "cover[s] direct physical loss to property." Defendant argues that, as a matter of law, "direct physical loss" does not include the damages claimed by Plaintiffs. Defendant contends that Plaintiffs are seeking recovery for the repair of poor workmanship, and that such repair costs constitute only economic, not direct physical loss. Defendant argues that damage *caused by* faulty workmanship would be covered under the Policy's direct physical loss limitation, but that the costs of repairing the defective work itself is not, because such defects do not constitute a "direct physical loss."

Few cases define "direct physical loss." In *Great Northern Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F.Supp. 259 (D.Or.1990), the court held that the cost of removing asbestos was not covered by an insurance policy covering only direct physical loss. The court found that, since the insured building remained physically intact and undamaged, the only loss—the cost of removal of the asbestos— was economic. *See id.* at 263. Furthermore, the United States Court of Appeals for the Fifth Circuit in *Trinity Indus. Inc. v. Insurance Co. of N. Am.*, 916 F.2d 267 (5th Cir.1990) found that a builders risk policy covering "all risks of physical loss or of damage to the subject matter" did not cover the cost incurred to correct the faulty workmanship itself. The court found that, while accidents or damage *caused by* defective workmanship would

generally be covered by an "all risks" policy, such a policy does not cover repair or replacement of the defective work itself. *Id.* at 269–70. The court found that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state— for example, the car was undamaged before the collision dented the bumper. It would not ordinarily be thought to encompass faulty initial construction." *Id.* at 270–71; *see also Bethesda Place Ltd. Partnership v. Reliance Ins. Co.*, 1992 WL 97342, at *3 (D.Md. Apr. 22, 1992) (unpublished) ("case law does not support the argument that a design defect in and of itself constitutes physical injury or damage to property from an external cause.").[3]

The majority of Plaintiffs' claimed damages encompass repair or replacement costs for the defective work done by the contractor, Robinson—not for any accidents or damages resulting from the defective work independent of the defects themselves. Thus, Plaintiffs claims fall directly under *Trinity*, and are precluded by the policy language limiting coverage to "direct physical loss."

■ Plaintiffs argue that "direct physical loss" is not defined, that construction defects are often found to be covered under an "all risks" policy, and that the Policy thus covers all loss that is not specifically excluded.[4] They argue that an all

---

3. Plaintiffs argue that the Policy does not make sense unless "direct physical loss" includes defective workmanship, because otherwise the Policy's defective workmanship *exclusion* would be redundant. However, the Policy is internally consistent even though "direct physical loss" does not include the defective workmanship itself. "Direct physical loss" does include damage *caused by* defective construction. The Policy thus specifically excludes "loss *resulting directly or indirectly from* ... a fault, weakness, defect or inadequacy in the ... design, workmanship, construction materials...." under certain circumstances (emphasis added). This exclusion is necessary because such secondary damages are otherwise covered under the definition of "direct physical loss."

4. Plaintiffs argue that the opinion of the United States Court of Appeals for the Fourth Circuit in *U.S. West, Inc. v. Aetna Cas. & Sur. Co.*, 117 F.3d 1415, 1997 WL 400081 (4th Cir. July 16, 1997) (unpublished) is controlling here. However, in *U.S. West*, because there was "no contention that coverage does not otherwise exist under the policies," the issue was the meaning of the insurance policy's exclusion for the cost of repairing "faulty workmanship." *Id.* at *3. The court thus was not confronted with the threshold question, presented here, of what is included in the definition of "direct physical loss." Moreover, the policy at issue in *U.S. West* differed from the Policy here, and that court's finding that "fortuity" was the dispositive issue rested in part on the ambiguity of the term "faulty workmanship" and the ultimate finding that

risks policy covers "fortuitous loss," which includes losses that were unknown and unexpected by the parties at the time they entered into the contract. *See Fidelity & Guar. Ins. Underwriters, Inc. v. Allied Realty Co. Ltd.*, 238 Va. 458, 384 S.E.2d 613, 615 (1989). However, an "all risks" policy's coverage of fortuitous losses does not mandate coverage for the repair of construction defects as part of a direct physical loss. *Fidelity* involved structural damage to a warehouse caused by excessive earth pressure. The court held that since, at the time of contracting, no one expected the building to fail structurally, the loss—which included the structural damage and the cracks in the walls it caused—was covered as a fortuitous event. However, the *Fidelity* court did not hold that an all risks policy covers *all* fortuitous loss. Thus, the fact that the defective construction was unanticipated by either party does not automatically imply that such defects are covered by the Policy. The "direct physical loss" language provides a further limitation on the types of fortuitous loss covered under the Policy. The Court finds the reasoning in *Trinity* persuasive. Therefore, construction defects are not covered.[5]

Plaintiffs' claims for repair of the construction defects themselves are not covered by the policy because they do not allege claims for direct physical loss. Defendant's motion for summary judgment is **GRANTED** to the extent Plaintiffs claim their damages are the costs of repairing and replacing the construction defects.[6]

### B) Limitations Clause

Defendant argues that even if Plaintiffs' loss is covered under the Policy, it is entitled to summary judgment because Plaintiffs' action is barred by the Policy's limitation clause. The Policy provides that "[n]o action can be brought unless there has been compliance with the policy provisions and the action is started within two years after the date of loss or damage." This provision is mandated under Virginia law because the Policy includes provisions covering fire damage. *See* Va.Code Ann. § 38.2–2105 (Michie 1999); *Hitt Contracting, Inc. v. Industrial Risk Insurers*, 258 Va. 40, 516 S.E.2d 216, 217 (1999). In order to be covered, Plaintiffs' loss must have occurred by January 14, 1997, before they canceled the Policy. Thus, Plaintiffs had to file suit by January 14, 1999 in order to fall within the limitations period.

Plaintiffs claim that the Policy's limitations clause, whose language differs from the language mandated by Virginia Code Section 38.2–2105, is ambiguous because it refers to the date of "loss or damage."[7] Plaintiffs claim that loss and damage have two different meanings, and that "loss" refers to the event that caused their harm—the faulty construction—but that their "damage" did not occur until they paid for the repairs on August 4, 1998. Thus, their action was instituted within the limitations period.

Ambiguities in an insurance policy should be construed in favor of the

---

the work was not faulty—and was in fact fortuitous—because the damage was no one's fault. *See id.* at *4.

**5.** Plaintiff maintains that *Trinity* sets forth the minority rule regarding the definition of "fortuity," that Virginia follows the majority approach defining a fortuitous loss as one dependent on chance from a subjective standpoint, and that the loss here was fortuitous. However, the definition of fortuity is not the issue here. Assuming Plaintiffs' loss is fortuitous, the Policy nevertheless covers *only* those fortuitous losses that are direct and physical. Thus, it is the definition of "direct physical loss" that is dispositive.

**6.** Plaintiff Mark Whitaker attaches to his affidavit a list of damages *caused by* the contractor's defective construction, which would still be covered as direct physical loss under the policy, absent the applicability of any exclusions. These damages amount to approximately $5,250.

**7.** Va.Code § 38.2–2107 allows simplified language to be substituted for the language in § 38.2–2105, as long as it is no less favorable to the insured. *See* Va.Code Ann. § 38.2–2107.

insured, provided no strained constructions of the policy are adopted which would be at odds with the parties' intent. *See First Am. Title Ins. Co. v. Seaboard Sav. & Loan,* 227 Va. 379, 315 S.E.2d 842, 845 (1984) (quoting *Quesenberry v. Nichols,* 208 Va. 667, 159 S.E.2d 636, 638 (1968)). However, the policy here is not ambiguous, and to interpret "loss" and "damage" as having such differing meanings under the Policy would place a strained construction on the Policy terms, would lead to absurd results, and would thwart the intent of the drafters of Virginia Code Sections 38.2–2105 and 38.2–2107. *See Coker v. State Farm Fire & Casualty Co.,* 1998 WL 972219 (Va. Cir. Ct. June 4, 1998) (unpublished).[8] The *Coker* policy also had a limitations provision which referred to the "date of loss or damage," and the plaintiff in *Coker* made the same arguments that the Plaintiffs make here. The court found that a review of the policy as a whole revealed that the terms "loss" and "damage" were meant to be used interchangeably. *See id.* at *3. The court further rejected the plaintiff's argument that "the inclusion of the phrase 'or damage' in the limitation provision of the policy creates additional rights for the insured. To rule otherwise would create precedent that could potentially thwart the obvious intent of the General Assembly in its enactment of Va.Code 38.2–2107 to allow fire insurance policies to be more 'reader friendly.' In addition, to accept [the plaintiff's] proposed interpretation of the Policy could lead to absurd results." *Id.* at *5. The court explained that absurd results would ensue if a policy holder could expend funds for repair years after a fire and assert that the limitations period had not expired because the damage was not incurred until payment for the repairs was made. *See id.* at *5 n. 5.

■ This is precisely what Plaintiffs are attempting to do here. Allowing Plaintiffs to claim that their "damage" (the payment) did not occur until August 4, 1998, more than one year after their "loss" (the defective workmanship) would allow them to impermissibly stretch the limitations period. The statutorily-mandated limitation provision should be strictly construed. *See Bilicki v. Windsor–Mount Joy Mut. Ins. Co.,* 954 F.Supp. 129, 131 (E.D.Va. 1996); *Ramsey v. Home Ins. Co.,* 203 Va. 502, 125 S.E.2d 201, 204 (1962); *see also Hitt,* 516 S.E.2d at 219 ("the possibility that in certain circumstances an insured might not be able to recover replacement costs incurred near or at the end of the two year limitations period does not change the plain language of Code § 38.2–2105 and this policy."). Like the policy in *Coker,* the Policy here uses the terms "loss" and "damage" almost interchangeably. For example, it defines "Property Damage" as "physical injury to or destruction of tangible property," including resulting loss of its use. The Plaintiffs appear to be trying to have it both ways—so that their loss occurs during the period of policy coverage, but damage occurs within the period of limitations. This begins to resemble the "absurd" results anticipated by the court in *Coker.*

Thus, the date of "loss or damage" is not the date of payment or repair, but the date any actual damage caused by faulty construction occurred. It is unclear at exactly what date this damage developed, but, as Defendant notes, it must have been before May 27, 1997, when the Plaintiffs' damage claims were first investigated by Leavitt. The basis of Plaintiffs' claims in this case are those damages cited in the Leavitt report, as evidenced by their reference to those 1997 claims in their February 12, 1999 demand for payment. Moreover, any loss or damage occurring after January 14, 1997 would not have been covered by the Policy because Plaintiffs canceled the Policy on that date. Claims based on either a January 1997 or a May 1997 date of loss are barred by the two-year limitations pro-

---

8. While the unreported *Coker* opinion does not have precedential value, the Court finds its analysis instructive.

vision. Thus, Defendant's motion for summary judgment is **GRANTED** on this ground.

### C) Estoppel

█ Plaintiffs claim that Defendant should be estopped from asserting the limitations period as a defense because they were told in June 1997 by Defendant's agent, Mr. Marks, that the Policy did not cover their loss, and they relied on this assertion in deciding not to pursue a claim. Equitable estoppel can counter a statute of limitations claim under Virginia law. *See Bilicki*, 954 F.Supp. at 133. In order to establish estoppel, a party must prove: (1) concealment or misrepresentation of a material fact; (2) the misrepresentation was made with knowledge of the fact; (3) the other party was ignorant of the truth; (4) the representation was made with the intention that the other party rely on it; (5) the other party was induced to act on it; and (6) the party was harmed. *See Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86, 266 S.E.2d 887 (1980). Fraudulent intent is not required, and even negligent or unintentional misrepresentations can be a basis for equitable estoppel. *See, e.g., Federal Ins. Co. v. Starr Elec. Co.*, 242 Va. 459, 410 S.E.2d 684, 686–87 (1991).

Even if Defendant's agent told Plaintiffs that the Policy did not cover their claim, Defendant is not equitably estopped from asserting the limitations defense. To the extent that Plaintiffs' claim was based on a recovery for the repair of construction defects, that claim is *not* covered by the Policy, so Defendant's agent made no misrepresentation. Moreover, Plaintiffs do not allege that Defendant's one-time misrepresentation about the scope of coverage was ongoing and thus prevented them from ever asserting a claim under their Policy. Defendant told Plaintiffs in June of 1997 that the Policy did not cover their loss. The Leavitt report detailing the defects and damage to Plaintiffs' property came out one month later, in July 1997. Plaintiffs state that they were not fully aware of the extent of the damage until that report was issued. Nevertheless, once they were given this new information, Plaintiffs failed to inquire again about coverage under their Policy or to submit a claim. In fact, Plaintiffs failed to make any renewed inquiry or claim for the next one-and-a-half years. "Equitable estoppel comes into play when a party conceals a fact that prevents a potential plaintiff from having evidence necessary to prove a claim, or an element thereof." *Estate of Arthur Knight v. Hoggard*, 182 F.3d 908, 1999 WL 390987 (4th Cir. June 15, 1999) (unpublished). Notwithstanding Defendant's one-time representation, equitable estoppel cannot be invoked to excuse Plaintiffs' failure to assert a claim about which they possessed all the relevant information well before the limitations period expired. Thus, equitable estoppel does not apply.

### D) Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on the ground that they are not subject to the Policy's exclusions and Defendant has no other defenses. Although Plaintiffs do not appear to fall under the Policy's exclusions, since Defendants are entitled to summary judgment on both the policy coverage and limitations grounds, Plaintiffs' motion is **DENIED.**

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED.** Plaintiffs' motion for summary judgment is **DENIED.** Defendant's motion to strike is moot and is therefore **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to counsel for Plaintiffs and to counsel for Defendants.

**IT IS SO ORDERED.**