CRESTVIEW COUNTRY CLUB, INC. and Woodlawn Realty Corp., Plaintiffs

v.

ST. PAUL GUARDIAN INSURANCE COMPANY, Defendant

No. CIV.A.03–30214–KPN.

United States District Court, D. Massachusetts.

June 16, 2004.

Mark J. Albano, Dalsey, Ferrara & Albano, Springfield, MA, for Crestview Country Club, Inc., Woodlawn Realty Corp., Plaintiffs.

Gregory P. Varga, Robinson & Cole LLP, Boston, MA, for St. Paul Guardian Insurance Company, Defendant.

Anthony R. Zelle, Robinson & Cole, Boston, MA, for St. Paul Guardian Insurance Company, Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO THE PARTIES' CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Document Nos. 13 and 18)*

NEIMAN, United States Magistrate Judge.

St. Paul Guardian Insurance Company ("Defendant") has moved for partial summary judgment on that portion of the complaint of Crestview Country Club, Inc. and Woodlawn Realty Corp. ("Plaintiffs") which seeks coverage for redesigning and modifying a golf course hole after a particular tree was damaged in a storm. Plaintiffs have filed their own motion for partial summary judgment. In essence, both parties want the court to interpret the insurance contract and decide whether a certain category of expenses is covered thereunder. The exact amount of damages, if any, has been reserved by the parties for future proceedings.

With the parties' consent, this matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including entry of judgment. For the reasons that follow, the court will allow Defendant's motion for partial summary judgment and deny Plaintiffs' cross motion.

## I. Summary Judgment Standard

Summary judgment is appropriate where there is no dispute as to any material fact and, while viewing these facts in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See, e.g., Wolinetz v. Berkshire Life Ins. Co.,* 361 F.3d 44, 47 (1st Cir.2004); *Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 7 F.3d 1047, 1050 (1st Cir.1993) (citing *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816 (1st Cir.1991)). The interpretation of contractual provisions in an insurance policy is generally a matter of law. *Foisy v. Royal Maccabees Life Ins. Co.,* 356 F.3d 141, 147 (1st Cir.2004) (citing *Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co.,* 430 Mass. 794, 724 N.E.2d 295, 298 (2000)).

## II. Background

For purposes here, the following facts are undisputed. Plaintiffs own and operate a golf course in Agawam, Massachusetts. In May of 2001, Defendant issued a property insurance policy which provided general coverage, up to $300,000, for "direct physical loss or damage to golf course grounds." The policy also had a separate "tree, plant or shrub" sublimit that capped, at $500, payment for damages to and removal of any tree, plant or shrub, not including debris removal.

On August 10, 2001, a severe wind storm destroyed a large ash tree—known colloquially as the "Poltergeist Tree"—which had been located on the left side of the thirteenth hole. The tree had stood seventy-five feet tall, had branches that overhung the fairway and was approximately two hundred and ten yards from the tee box in the anticipated landing zone of a typical tee shot.

After the storm, Plaintiffs submitted an $18,178 claim for damage to trees, including the Poltergeist Tree, caused by the windstorm. Although Defendant paid that claim in full, Plaintiffs' present claim concerns a redesign of the thirteenth hole as a result of the loss of the Poltergeist Tree. According to the affidavit of W. Marshall Victor ("Victor") of the Roger Rulewich Group, a golf course design firm retained by Plaintiffs, the loss of the tree has

changed the thirteenth hole's "character, challenge, rating, slope and psychology." Victor presents two options for returning the hole to its pre-storm rating and slope: (1) planting several trees in the fairway area to create a similar obstacle; or (2) building a bunker complex in the same area to create a comparable obstacle.[1]

The original amount of Plaintiffs' redesign claim was $137,512. At oral argument, however, Plaintiffs explained that the redesign has not yet occurred and that the actual amount needed to accomplish the task is now projected to be between $40,000 and $50,000. Whatever the amount, Defendant argues, the proposed redesign is not included within Plaintiffs' covered losses.

## III. DISCUSSION

■■■ When interpreting an insurance policy, a court must consider "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Atlantic Mut. Ins. Co. v. McFadden*, 413 Mass. 90, 595 N.E.2d 762, 764 (1992) (citation and internal quotation marks omitted). If the language is unambiguous, the court should "construe the words of the policy in their usual and ordinary sense." *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 675 N.E.2d 1161, 1164 (1997). When an ambiguity does exist, the court still may construe the disputed language if extrinsic

evidence is not necessary to resolve the dispute. *See Foisy*, 356 F.3d at 148. The court must then interpret the term in the way most favorable to the insured. *See Hakim*, 675 N.E.2d at 1165. A mere difference of opinion between the two parties as to the meaning of a word or phrase, however, does not create ambiguity. *Foisy*, 356 F.3d at 147 (citing cases). "A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 688 N.E.2d 951, 953 (1998).

■■■ Defendant pursues essentially two arguments. First, Defendant contends that, pursuant to the "tree, plant or shrub" sublimit, coverage for damage to the Poltergeist Tree is capped at $500.[2] Plaintiffs, in counterpoint, argue that the $500 sublimit cannot apply when, as here, the loss of the tree was accompanied by additional losses to the surrounding area. For its part, the court finds that the $500 tree, plant and shrub sublimit applies only to the actual loss of the tree itself, not to any claimed redesign and modification of the thirteenth hole. As such, the sublimit is clear and unambiguous and ought to be enforced as Defendant argues. *See Altru Health Sys. v. Am. Protection Ins. Co.*, 238 F.3d 961, 964 (8th Cir.2001) (enforcing sublimit where a "claim is clearly and un-

1. The court has denied Defendant's motion to strike Victor's affidavit. As described below, the pivotal question is whether "physical damage" was sustained. The fact that Victor believes that the tree loss has changed "the character, challenge, rating, slope and psychology of the hole" adds nothing which would affect the court's analysis.

2. The sublimit provides as follows:
Limits of coverage. The limit shown in the Coverage Summary applies to each golf course at a location described in the Cover-

age Summary. The most we'll pay for covered damage is further limited by the following: *Tree, plant or shrub limit*. We'll pay up to the limit shown in the Coverage Summary for damage to and removal of any tree, plant or shrub. The tree, plant or shrub limit does not include debris removal.
(Policy, Golf Facilities Property Endorsement, ¶ 7 at 11.) The Coverage Summary lists the overall limit as $300,000 and the "tree, plant or shrub" sublimit as $500.

ambiguously subject to the ... sublimit of liability"); *Indiana Ins. Co. v. Pana Community Unit Sch. Dist. No. 8,* 173 F.Supp.2d 835, 841 (C.D.Ill.2001) (enforcing "unambiguous sublimit"), *aff'd* 314 F.3d 895 (7th Cir.2002).

■ The court also agrees with Defendant's second argument, i.e., that the "wind or hail" provision in the policy prevents Plaintiffs from recovering the costs of redesigning and modifying the thirteenth hole so as to restore its slope, rating and character. That provision reads as follows:

Covered Causes of Loss

We'll cover direct physical loss or damage to golf course grounds covered by this endorsement that's caused by any of the following causes of loss:

.    .    .    .    .

**Wind or hail.** We'll cover loss or damage caused by wind or hail.

(Policy, Golf Facilities Property Endorsement, ¶ 7 at 9–10.) As Defendant argues, the key phrase—"direct physical loss or damage"—does not pertain to the ephemeral changes for which Plaintiffs seek recovery.

To be sure, Plaintiffs argue that the change in the slope, rating and character of the thirteenth hole is indeed a "direct physical loss or damage to the golf course grounds." As Plaintiffs point out, the policy defines "golf course grounds" as including "greens, tees, and fairways; practice putting greens, practice driving areas; fairways, rough, sand traps, bunkers, and other outdoor grounds at the premises described, specifically designed and maintained for the game of golf; and trees, plants, shrubs." (*Id.* at 9.) Since the Poltergeist Tree was an obstacle at the thirteenth hole, Plaintiffs continue, its removal caused a substantial alteration of that hole. Plaintiffs contend further that the definition of "golf course grounds" strongly suggests that the parties meant to have the course viewed in its entirety.

Plaintiffs also argue, apparently in the alternative, that "direct physical loss or damage" is not defined in the policy and is not specifically limited to "tangible" loss or damage. Since the phrase is ambiguous, Plaintiffs assert, it should be construed broadly against the insurer. In so arguing, Plaintiffs rely on *Matzner v. Seaco Ins. Co.,* 1998 WL 566658 (Mass.Super. Aug. 12, 1998), where the court ruled that the phrase "direct physical loss or damage" was ambiguous and could have two different meanings, one pertaining to tangible damage and the other including a "wider array of losses." *Id.* at *3. The court settled on the second meaning and allowed for coverage of expenses relating to contamination of an apartment building by carbon-monoxide, even though the contamination did not physically damage the structure. *Id.* at *3–4.

■ Although Plaintiffs' arguments are creative, they are not persuasive. In the court's opinion, "physical" must be given its plain meaning—e.g., "material", *see American Heritage Dictionary* (Second College Edition 1982)—and an intangible loss in value of a golf course because of a change in its slope rating, difficulty, etc., does not fit within this meaning. Moreover, in this court's estimation, the "character" of the course is not part of the policy's definition of "golf course grounds."

■ Several Massachusetts courts, as well as others elsewhere, have interpreted the phrase "direct physical loss" in a similarly narrow way. *See, e.g., Welch v. CNA Ins. Cos.,* 1996 WL 1353314, at *3 (Mass.Super. Aug. 13, 1996) ("loss in value or the inability to sell a piece of land" was not "direct physical loss"); *Arbeiter v. Cambridge Mut. Fire Ins. Co.,* 1996 WL

1250616, at *1 (Mass.Super. Mar. 15, 1996) (diminution in value to house because passive ventilation system used to dissipate oil fumes was not "physical loss"). *See also Pirie v. Fed. Ins. Co.*, 45 Mass.App.Ct. 907, 696 N.E.2d 553, 555 (1998) (cost of remediating lead paint not covered because "an internal defect in a building ... does not rise to the level of a physical loss"); *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 26 Mass.App.Ct. 374, 527 N.E.2d 1179, 1179–80 (1988) (claims for defects in title to heavy construction equipment not covered by "all risks" policy which "only applies to physical losses"); *Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 282 Or. 401, 578 P.2d 1253, 1254–56 (1978) (denial of coverage for "labor expenses involved in replacing [allegedly] defective studs" was proper because "the word 'physical...' negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage' "). *Cf. Aetna Life & Cas. v. Patrick Indus.*, 645 N.E.2d 656, 660 (Ind.Ct.App.1995) (following the "majority of courts" holding that "intangible damages, such as diminution in value, do not constitute property damage"). The theme of these decisions (and others cited in Defendant's memoranda) is as follows: once physical damage is fixed and paid for by the insurer, any diminution in value, income or use is not "physical damage" and, hence, not recoverable under language similar to the clause at issue here.

In short, there is that no ambiguity in the phrase "direct physical loss or damage" as it applies to the facts here. The phrase is simply not susceptible to more than one meaning by "reasonably intelligent persons." The only "physical" damage to the thirteenth hole was the harm to the Poltergeist Tree itself, a claim which has been paid. Plaintiffs' present claim, in contrast, encompasses work necessary to return the hole not to its former physical appearance, but to the same subjective level of difficulty. The policy is not designed for such coverage and, accordingly, the court will enter partial summary judgment in Defendant's favor.

## IV. CONCLUSION

For the reasons stated, the court ALLOWS Defendant's motion for partial summary judgment and DENIES Plaintiffs' cross-motion. The clerk shall schedule a case management conference.

IT IS SO ORDERED.