**TOCCI BUILDING CORP. and Candlewood Hotel Co., Inc., Plaintiffs,**

v.

**ZURICH AMERICAN INSURANCE COMPANY, Defendant.**

**Civil Action No. 07–10597–NMG.**

United States District Court, D. Massachusetts.

Sept. 25, 2009.

Caryn L. Daum, Claire E. Newton, Steven P. Perlmutter, John W. Steinmetz, Robinson & Cole LLP, Boston, MA, for Defendant.

Christopher J. Trombetta, Law Office of Christopher J. Trombetta, Mansfield, MA, for Plaintiffs.

NATHANIEL M. GORTON, District Judge.

ORDER ON REPORT AND RECOMMENDATIONS—accepted and adopted.

Action on motion: motion for summary judgment allowed.

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

September 9, 2009

### I. INTRODUCTION

Plaintiffs, Tocci Building Corporation ("Tocci") and Candlewood Hotel Company, Inc. ("Candlewood"), have brought this action against Zurich American Insurance Company ("Zurich") seeking insurance payments for work done on a retaining wall and related business interruption losses. Zurich has denied coverage. This matter is presently before the court on Zurich's Motion for Summary Judgment pursuant to which Zurich is seeking judgment in its favor on all counts of the complaint. As detailed more fully herein, the undisputed facts establish that the work on the retaining wall was not done because of "direct physical loss or damage" to the wall. Consequently, this court finds that there was no insurance coverage under Zurich's policy and recommends to the District Judge to whom this case was assigned that Zurich's Motion for Summary Judgment (Docket No. 46) be ALLOWED.

### II. STATEMENT OF FACTS [1]

In ruling on a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). Applying these principles to the instant case, the relevant facts are as follows:

### Damage to the Retaining Wall

This action involves construction work done to a retaining wall at a hotel construction site in Burlington, Massachusetts. Tocci was the general contractor on the job, and Candlewood owned the site. Zurich issued a builders risk insurance policy to Candlewood that covered the construction of the hotel during the relevant period. (SF ¶ 1).

The hotel construction site incorporated an extensive retaining wall separating elevated portions of the site from the Middlesex Turnpike, among other things. (SF ¶ 2). The retaining wall at issue was multi-tiered and over 1200 feet in length. (*Id.*). It was constructed from loosely laid large boulders and fill from the construction site. (*Id.*).

There was a substantial rainstorm in Burlington on the evening of June 6, 2000 which caused damage to the retaining wall.[2] (SF ¶ 4; Resp. ¶ 4). As Tocci has admitted:

> The direct physical damage to the Retaining Wall that occurred on June 6, 2000 was limited to less than 100 feet of the 1200 foot wall. As characterized by Tocci's engineers ...

---

[1]. Unless otherwise indicated, the facts are derived from (1) Zurich's Statement of Material Facts as to Which There is No Genuine Dispute (Docket No. 48) ("SF"); (2) the exhibits attached to the Affidavit of Zurich's counsel, John W. Steinmetz, Esq. (Docket No. 49) ("Zurich Ex."); (3) the Affidavit of Zurich's Property Litigation Specialist Kathryn S. Roberts (Docket No. 50) ("Roberts Aff."); (4) Plaintiffs' Response to Defendant's Statement of Undisputed Facts (Docket No. 53)

("Resp."); and (5) the exhibits attached to the Affidavit of Tocci's counsel, Christopher J. Trombetta (Docket No. 54) ("Tocci Ex.").

[2]. The parties disagree as to whether the damage was caused by a "flood" as defined by the insurance policy. Damage due to a "flood" is excluded from coverage. This issue does not need to be resolved in light of this court's conclusion that there is no coverage.

An approximate 35–foot long portion of the upper wall slid and toppled into the lower wall. The overall affected length of the upper wall where stones had visually moved is about 65 feet long. Approximately 35 feet of the lower wall was also affected.

The remainder of the 1200 foot long wall suffered no physical loss or damage on June 6, 2000 or thereafter.

(SF ¶ 6; Resp. ¶ 6).

On June 9, 2000, the Town of Burlington issued a stop work order and declared the wall unsafe as a result of the damage incurred in the storm. (Zurich Ex. G). In early August 2000, the Town gave Tocci permission to repair the 100′ section of the wall that had been damaged on June 6, 2000. (SF ¶ 9). Those repairs took less than one week and were completed by August 14, 2000. (Id.). Meanwhile, however, upon inspection, the Town concluded that the retaining wall had not been built in accordance with the approved plans, and notified Tocci by letter dated August 15, 2000 that the wall needed to be demolished and reconstructed. (Zurich Ex. D). Tocci disputed this conclusion,[3] and argued to the Town that the demolition was unnecessary, expensive and time-consuming. (Tocci Ex. Q). Tocci's engineering firm, Jaworski Geotech, Inc., who designed the wall and supervised its construction, insisted that it was built correctly. (See Tocci Ex. C at 30–31, 85).

Tocci and the Town engaged in negotiations about how to proceed. In November 2000, the Town agreed to permit the hotel to open if Tocci would grout the entire wall. (Tocci Ex. Q). According to Tocci, plaintiffs only agreed to this plan in order to prevent further delays; it was not structurally necessary. (Id.). The grouting of the entire wall was completed on November 11, 2000. (SF ¶ 13; Resp. ¶ 13). The hotel, which was originally scheduled to open on July 31, 2000, eventually opened on November 17, 2000. (See id.; Opp. (Docket No. 52) at 3). In the instant litigation, the plaintiffs are seeking coverage for the grouting of the wall and the delay in the hotel opening.

### Conway Construction Litigation

In May 2001, G. Conway, Inc. ("Conway"), the construction sub-contractor who built the retaining wall, sued Tocci to recover amounts allegedly owed under its contract. (Tocci Ex. H) (the "Conway litigation"). Conway contended that the damage to the wall was not due to construction defects. Tocci and Candlewood counterclaimed against Conway, and brought claims against other parties, including Tocci's engineers, alleging, *inter alia,* that there had been faulty workmanship in the construction of the retaining wall. (See SF ¶ 20; Resp. ¶ 20; Tocci Ex. I). *See* note 3, *supra.* There was no adjudication of this issue on the merits, and the case was settled and dismissed, with prejudice, on December 11, 2006. (SF ¶ 20; Trombetta Aff. ¶ 19).

### The Commonwealth Insurance Litigation

Candlewood also had insurance at the Burlington property with Commonwealth Insurance Company ("Commonwealth"), and submitted a claim following the storm. Commonwealth agreed to pay for the repair of the damaged portion of the wall, cleanup and public safety expenses, and

---

**3.** In this case, Tocci also contends that the wall was properly built, and that the Town was simply being unreasonable. However, Zurich contends that Tocci is bound by the position it took in litigation against G. Conway, Inc., who built the wall, and Commonwealth Insurance Co., another insurer, where Tocci contended that the wall was not built properly. *See* discussion *infra.*

two weeks of business interruption. It declined coverage for the grouting of the rest of the wall, and for the balance of the delay in opening the hotel pending completion of the grouting. Thereafter, on May 30, 2002, Tocci and Candlewood brought suit against Commonwealth in the Massachusetts Superior Court, claiming "that Commonwealth failed to comply with the terms of the policy by (1) failing to cover the costs incurred in bringing the retaining wall into compliance with the Town's building code, and (2) compensating the plaintiffs for only two weeks of business interruption rather than the entire 110–day delay in opening the hotel." *Tocci Bldg. Corp. v. Commonwealth Ins. Co.*, 22 Mass. L. Rep. 522, 2007 WL 1830829, at *2, 2007 Mass.Super. LEXIS 181, at *4 (Mass.Super.Ct. Apr. 23, 2007) (Zurich Ex. A). The parties filed cross-motions for summary judgment. The trial court entered summary judgment in favor of Commonwealth, and this decision was affirmed on appeal. *Tocci Bldg. Corp. v. Commonwealth Ins. Co.*, 71 Mass.App.Ct. 1120, 2008 WL 1787302 (2008) (Zurich Ex. B). As the Superior Court found:

> the policy limited coverage to the costs of returning the retaining wall to the condition it was in prior to the storm. This coverage did not include the costs of grouting the undamaged part of the retaining wall, as this was not done for the purpose of returning the retaining wall to its prior condition. Rather, Tocci grouted the retaining wall at the Town's command, after the Town deemed the wall noncompliant with local laws. For the same reason, the policy did not cover the costs of bringing the undamaged portion of the retaining wall into compliance with local laws.

(Zurich Ex. A at *17). Thus, the court granted Commonwealth's motion for summary judgment on the claims relating to the costs of grouting the retaining wall.

For the same reasons, the court granted Commonwealth's motion for summary judgment on the claim for business interruption damages, finding that "the record supports Commonwealth's position that the 110–day delay in opening the hotel resulted not from the storm damage, but from the Town's requirement that Tocci bring the retaining wall into compliance with local ordinances." (*Id.* at *18–19). The court held that the Commonwealth policy did "not provide coverage for business interruption resulting from the retaining wall's faulty workmanship, poor design, or municipal code violations." (*Id.* *20–21).[4]

### *The Zurich Policy*

Zurich's builders risk policy defines "Covered Property" as:

> a. Building(s) and structure(s) including your building materials and supplies, equipment, machinery and fixtures, intended to become a permanent part of any building or structure described in the Declarations while in the course of construction. We also cover foundations[.]

(Policy (Zurich Ex. C) § A.1 (ZUR 39); SF ¶ 23). "Covered Causes of Loss" is defined as:

> Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" to Covered Property except those causes of "loss" listed in the Exclusions.

(Policy § A.4 (ZUR 39); SF ¶ 21). "Loss," in turn, is defined as "accidental loss or damage." (Policy § F.2 (ZUR 41); SF ¶ 22).

---

**4.** The parties disagree as to the relevance of the Commonwealth decision on the instant case. Zurich contends that its policy has the same exclusions and that the decision is binding, while Tocci argues that the policies differ in significant points. *See* discussion *infra*.

The policy excludes losses caused directly or indirectly by enforcement of any ordinance or law (SF ¶ 25), by "flood" as defined in the policy (SF ¶ 26), or by faulty workmanship. (SF ¶ 27). It does cover loss of rental income, but only that loss sustained as a direct result of a "delay." (SF ¶ 28). Delay is defined as "a delay in the construction, erection or fabrication of Covered Property if the delay is a result of a Covered Cause of Loss." (Policy Amendment (ZUR 28); SF ¶ 29).

### The Claim

Zurich received notice of Candlewood's claim after all repairs had been completed and the wall had been grouted.[5] (*See* Zurich Ex. K). Thereafter, Zurich retained an independent engineer, Madsen, Knepper & Associates, Inc., to assist with the investigation of the claimed loss. (Roberts Aff. ¶ 5). Madsen issued a report dated March 3, 2003, concluding that "the failure of the wall was precipitated by construction methods not in accordance with the approved wall design." (Zurich Ex. L at ZUR 144). Zurich denied coverage by letter dated March 24, 2003. (Zurich Ex. K).

In their complaint, Tocci and Candlewood allege a breach of contract (Count I) and violation of Mass. Gen. Laws ch. 93A (Count II). According to the complaint, the plaintiffs are seeking compensation for repair to the 100′ of damaged wall and the business loss resulting therefrom, as well as the grouting of the wall and the 110–day delay in the hotel opening. The motions for summary judgment were briefed

accordingly. However, at oral argument the plaintiffs withdrew their claims relating to that portion of the wall that had been damaged (and the related business loss), as those claims had been satisfied by Commonwealth. Thus, the issue remaining before this court is whether there is coverage for the grouting of the wall and delay in opening of the hotel caused by the Town's requirement that the wall be either torn down or repaired. For the reasons detailed herein, this court finds that there is no coverage.[6]

## III. ANALYSIS

### A. Standard of Review

#### Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." *Id.* (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See Celotex*

---

**5.** Zurich asserts that it received notice by way of a phone call from Candlewood's Senior Vice President on March 15, 2001. (Roberts Aff. ¶ 2). Tocci claims that plaintiffs "had forwarded a letter to Zurich late 2000." (Resp. ¶ 17). While Tocci does contend that Zurich failed to address its claim in a timely manner, it does not argue that Zurich failed to inspect the wall before the repair work was

done. This is at least an implicit acknowledgment that the first notice to Zurich was after the repair work had been completed.

**6.** In light of this conclusion, this court will not address the numerous other arguments raised by the defendants, including, without limitation, whether any of the exclusions apply in this case.

*Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *See id.* at 324, 106 S.Ct. at 2553. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). Similarly, "conclusory responses unsupported by evidence" are insufficient to defeat a motion for summary judgment. *Griggs–Ryan v. Connelly*, 904 F.2d 112, 114 (1st Cir.1990).

### Insurance Contract Interpretation

The instant case involves Zurich's builders risk insurance policy. As the Massachusetts Supreme Judicial Court recently summarized the principles applicable to the interpretation of insurance policies:

> The interpretation of an insurance contract is a question of law. It is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense. We read the policy as written and are not free to revise it or change the order of the words. Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable, without according undue emphasis to any particular part over another. If in doubt, we consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered. Finally, any ambiguities in the language of an insurance contract are interpreted

against the insurer who used them and in favor of the insured.*

> * An ambiguity arises when there is more than one rational interpretation of the relevant policy language. However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other.

*Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 355–56 & n. 32, 910 N.E.2d 290, 304–05 & n. 32 (2009) (internal quotations and citations omitted).

### Collateral and Judicial Estoppel

Finally, Zurich contends that Tocci is bound by the court's rulings in the *Commonwealth* litigation finding that there was no insurance coverage for the grouting and related business loss. However, this court concludes that an independent analysis is appropriate.

■ As the court explained in *Johnson v. Mahoney*, 424 F.3d 83 (1st Cir.2005): Massachusetts courts apply the doctrine of collateral estoppel as it has been described in the Restatement (Second) of Judgments (1982). *Martin v. Ring*, 401 Mass. 59, 514 N.E.2d 663, 664 (1987). Section 27 of the Restatement provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982).

*Johnson*, 424 F.3d at 93. "'Actually litigated' means that an issue has been properly raised, submitted for determination, and necessarily determined by the earlier decision." *Wade v. Brady*, 460 F.Supp.2d 226, 240 (D.Mass.2006) (citation omitted). Moreover, the issue in the prior adjudica-

tion must be identical to the issue presently before the court. *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F.Supp.2d 224, 234 (D.Mass.2006).

■ In the instant case, there are significant differences in the Commonwealth and Zurich insurance policies which preclude the blanket application of the *Commonwealth* court's ruling to the instant case. For example, the definitions of covered properties and perils insured against are different, and the *Commonwealth* court relied on these provisions in its analysis. Thus, to the extent that the *Commonwealth* court relied on specific terms in its decision, the decision is not binding in the instant case since the issues are not identical. More importantly, a review of the issues of fact or law that Zurich contends were determined by the *Commonwealth* court and are binding on the plaintiffs here establish that they are either not critical to the instant case, or have been admitted. (*See* Def. Reply Mem. (Docket No. 57) at 3). Thus, while Zurich contends that this court is bound by the *Commonwealth* court's findings that only a 100′ section of the retaining wall was damaged in the flood, that the remainder of the wall did not sustain any physical loss or damage, and that Commonwealth fully compensated the plaintiffs for the repair of the damaged wall and for the business interruption arising from the need to repair the damaged wall section, these facts are undisputed in the instant case. (*See* SF ¶ 6; Resp. ¶ 6; Zurich Ex. A at *3). It is further undisputed that the delay in the opening of the hotel beyond the period needed to repair the damaged section was due to the Town's demands concerning the remainder of the wall. (*See* SF ¶¶ 12–13; Resp. ¶¶ 12–13).

The parties disagree as to whether the plaintiffs here are bound by the *Commonwealth* court's conclusion that the grouting was done to address construction defects and/or to bring the wall up to code, or whether the plaintiffs may assert that the wall was properly constructed and the Town was simply being unreasonable. From the record before this court, it does not appear that the issue whether the wall was actually defective was litigated to conclusion in either the *Conway* or *Commonwealth* litigation. Consequently, the doctrine of collateral estoppel is not applicable.

■ The real issue is whether the doctrine of judicial estoppel should apply. That doctrine "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir.2003). It is intended "to ensure that parties proceed in a fair and aboveboard manner, without making improper use of the court system. Consistent with that root purpose, the doctrine is flexible and not subject to mechanical rules for determining its applicability. Courts are prone to invoke it when a litigant is playing fast and loose with the courts and not otherwise." *Id.* (internal citations and quotations omitted)

■ "The contours of the doctrine are hazy, and there is no mechanical test for determining its applicability." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir.2004). It is "widely agreed" however, that for judicial estoppel to apply the party must be taking positions that are "directly inconsistent, that is, mutually exclusive." *Id.* In addition, "the responsible party must have succeeded in persuading a court to accept its prior position." *Id.* If these two elements exist, it "creates the appearance that either the first court has been misled or the second court will be misled, thus raising the spec-

ter of inconsistent determinations and endangering the integrity of the judicial process." *Id.*

■ In the instant case, this court concludes that judicial estoppel is not appropriate. The plaintiffs consistently asserted to the Town that the wall was properly constructed. The factual dispute as to the sufficiency of the construction was raised squarely in the *Conway* litigation, but that case was settled without resolution of the issue. It does not appear to have been a contested issue in the *Commonwealth* litigation. Thus, the plaintiffs did not "persuade" another court to accept their position.

In light of this court's interpretation of Zurich's insurance policy as not covering the grouting of the wall, there is no need to reach the issue as to whether the exclusions for faulty workmanship or enforcement of an ordinance—exclusions which would implicate the reason for the grouting work—are applicable. The fact that the plaintiffs may have taken inconsistent positions as to the sufficiency of the construction of the wall might be fodder for cross-examination if the issue was ever presented at trial, but this court does not find that the plaintiffs have been playing fast and loose with the judicial system by reasserting the position they previously took with the Town. Therefore, this court will not apply the doctrine of judicial estoppel and will address the issues presented here on the record before this court.

**B.  *Covered Loss***

■ The undisputed facts establish that the grouting of the wall was not a "covered loss" because it did not stem from "direct physical loss or damage" to the wall. As the plaintiffs have admitted, only the 100′ section of the wall that was repaired by August was physically damaged; the remainder of the wall was not damaged then or at any time thereafter. (Resp.¶ 6). Simply put, there was not a covered loss under the policy for this grouting work.

While at times the plaintiffs seem to have conceded that the Policy requires physical damage for coverage, in their memorandum in opposition to the motion for summary judgment they seem to be arguing that the storm was a "covered cause of loss" because it created a "risk of direct physical loss" to the property, and that physical damage was not otherwise required by the Policy. (*See* Opp. at 7 n. 2, 18). It is true that the only express reference to "physical" damage is found in the definition of "Covered Causes of Loss" which, as quoted above, "means RISK OF DIRECT PHYSICAL 'LOSS' to Covered Property except those causes of loss listed in the Exclusions." (Policy § A.4 (ZUR 39)). However, it would make no sense to cover an event which creates a risk of physical damage if physical damage was not a triggering event for coverage. Moreover, "loss" is expressly defined as "accidental loss or damage." It is impossible to read the insurance policy as providing coverage for "risk" in the absence of a "damage." Since it is undisputed that the grouting was not required due to damage to the retaining wall, there was no loss and hence no coverage. *See Pirie v. Fed. Ins. Co.,* 45 Mass.App.Ct. 907, 908, 696 N.E.2d 553, 554–55 (1998) (lead paint does not constitute physical loss and there is no coverage under the policy which defines a "covered loss" as including "all risk of physical loss to your house or other property covered"). *See also Crestview Country Club v. St. Paul Guardian Ins. Co.,* 321 F.Supp.2d 260, 264–65 (D.Mass.2004) (collecting Massachusetts cases defining "direct physical loss").

The plaintiffs argue that the grouting should be considered a continuation of the work done on the damaged section of the

wall, especially since the Town would not sign off on the work until the grouting was complete. However, they have not put forth any facts which would support such a finding. All the facts before this court establish that the failure of the 100′ section of the wall was distinct from the work done on the remainder of the wall. The storm and resulting physical damage to the 100′ section was merely the event which brought the retaining wall to the inspector's attention. The storm did not exacerbate any condition in the undamaged section or otherwise contribute to the Town's demand for either the tear-down of the wall or, finally, its grouting. In fact, it is the plaintiffs' current position that there wasn't anything wrong with the wall at all. There was simply no physical damage or loss which led to the grouting. *See Chattanooga Bank Assoc. v. Fidelity & Deposit Co. of Md.*, 301 F.Supp.2d 774, 780 (E.D.Tenn.2004) ("all risk" policy did not cover costs to upgrade code violations which were discovered after a fire where the code violations were not caused by the fire).

Plaintiffs argue that, nevertheless, they are entitled to recover lost rental income because "[t]he Policy does not require 'physical loss or damage' for coverage to exist as to costs incurred to minimize delay." (*See* Opp. (Docket No. 52) at 13 n. 6). This argument is inconsistent with the unambiguous terms of the Policy.

Plaintiffs rely on the Zurich Policy's Soft Cost and Rental Income Coverage provision that reads as follows:

Rental Income Coverage

We will pay to the extent not provided under Coverage A., part 1., Soft Cost Coverage, actual "loss" of Rental Income sustained as a direct result of the "delay."

(*See* Opp. (Docket No. 52) at 13). Plaintiffs, however, ignore the definition of "de-

lay," which is defined as "a delay in the construction, erection or fabrication of Covered Property *if the delay is a result of a Covered Cause of Loss.*" (emphasis added). As detailed above, Covered Cause of Loss requires direct physical damage. Here, there was no physical harm or any damage to the wall. Even assuming that the plaintiffs are correct and the storm alone was the "Covered Cause of Loss," there is still no coverage since the storm was not the cause of the need to grout. Thus, under no interpretation of the Policy is there coverage for the delay in opening since the delay was not the direct result of a Covered Cause of Loss.

Plaintiffs also contend that there is coverage for the grouting under various provisions of the Policy which required the insured to act expeditiously and to minimize its loss. Specifically, but without limitation, the plaintiffs rely on the "due diligence" provision, which states:

D. ADDITIONAL CONDITIONS

2. Due Diligence

In *the event of "loss,"* we will only pay for "loss" or damage during the period of time that would be required with due diligence and dispatch to *rebuild or restore the damaged covered location* with material of like kind and quality. *You shall do everything reasonable [ sic] possible to minimize your "loss."*

(Policy (Zurich Ex. C) at ZUR 27 (emphasis added)). In addition, the Policy provides:

In the event of "loss" or damage you shall:

1. minimize any interference with the construction schedule to avoid or reduce any resulting delay.

(Policy (Zurich Ex. C) at ZUR 27). Moreover, the Policy provides that Zurich "will pay for expenses necessarily incurred to reduce the 'loss[.]' " (*Id.* at ZUR 28).

Plaintiffs' argument is that because they agreed to the grouting so that the hotel could open sooner, and thereby minimized the loss of rental income, they should be compensated. Again, this argument must fail because the work which was to be done expeditiously must be done in connection with a "loss." Here, however, the grouting was not related to the storm damage to the wall—the undisputed facts establish that they were distinct events. While the plaintiffs may have been speeding up the opening of the hotel by agreeing to grout the wall, that does not alter the fact that the insurance coverage ended when the storm damage to the wall was repaired.

Plaintiffs' remaining arguments fail for the same reason. Thus, plaintiffs rely on several provisions of the Policy which provide payment for repairs done in order to comply with any ordinance or law. However, such work must be related to repair of damaged property. Again, the grouting was separate and apart from the repair of the damaged section.

Specifically, plaintiffs rely on:

*If a Covered Cause of Loss occurs to covered Building property* shown in the Schedule above, we will pay for loss to the undamaged portion of the building caused by enforcement of any ordinance or law that:

a. Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

b. Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

c. Is in force at the time of loss.

(Policy (Zurich Ex. C) at ZUR 30 (emphasis added)). They also rely on the Increase Cost of Construction endorsement, which provides:

Coverage C—Increased Cost of Construction Coverage.

*If a Covered Cause of Loss occurs* to covered Building property and an Increased Cost of Construction Limit of Insurance is shown in the Schedule above, *we will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law.*

(Policy (Zurich Ex. C) at ZUR 31 (emphasis added)). Since there was no "covered cause of loss" as there was no "direct physical damage" to the section of the wall to be grouted, there was no covered repair work for this section of the wall. The defendant's motion for summary judgment should be allowed.

### C. *Mass. Gen. Laws ch. 93A*

In Count II of their complaint, the plaintiffs allege that Zurich's handling of the claim and, in particular, its failure to effectuate prompt, fair and equitable settlement of the plaintiffs' claim, constitutes a violation of Mass. Gen. Laws ch. 93A. In light of this court's conclusion that Zurich properly denied coverage, plaintiffs' challenge to the claims handling process should fail as well.

### V. *CONCLUSION*

For all of the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Zurich's Motion for Summary Judgment (Docket No. 46) be ALLOWED.[7]

---

7. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party

who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–05 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).