Argued December 7, 1977, reversed and remanded May 23,
rehearing denied June 20, 1978

WYOMING SAWMILLS, INC., *Respondent,*
*v.*
TRANSPORTATION INSURANCE COMPANY,
*Appellant.*
(TC A 7601 00639, SC 25253)
578 P2d 1253

William L. Hallmark of Jones, Lang, Klein, Wolf & Smith, Portland, argued the cause and filed briefs for appellant.

Edwin J. Peterson of Tooze, Kerr, Peterson, Marshall & Shenker, Portland, argued the cause and filed a brief for respondent.

HOLMAN, J.

## HOLMAN, J.

This is an action by an insured against an insurance company to recover the amount of a claim paid by the insured and asserted by it to have been covered by a policy of comprehensive general liability insurance. The action was tried by the court sitting without a jury upon a stipulated statement of facts and documentary exhibits. Defendant appeals from a judgment for plaintiff.

Plaintiff, a lumber manufacturer, sold 2 x 4 studs to North Pacific Lumber Company which, in turn, sold them to Morris-Knudsen Company, a building contractor. Morris-Knudsen then used the studs in the construction of buildings at Lowry Air Force Base, Colorado. In April 1974 plaintiff received notice from North Pacific that some of the studs had warped, twisted, or were otherwise defective and would have to be replaced. Negotiations resulted in plaintiff's settling any claims North Pacific might have in exchange for two releases. One of the settlement instruments covered the labor expenses involved in replacing the defective studs; the other dealt with the cost of acquiring new studs. This case involves only the claim based on labor expenses. It does not include the claim for the cost of acquiring new studs. Plaintiff advised defendant of the claim against plaintiff and tendered its defense. It also notified defendant that if the tender was not accepted, plaintiff would settle the claim and seek reimbursement.

After plaintiff settled North Pacific's claim, defendant advised plaintiff that it was denying liability on the basis of policy exclusion (n) which excludes coverage for damage to the named insured's products. Plaintiff then initiated the present action.

In the action defendant denied the existence of "property damage" as covered by the policy. It also contended that exclusions (m), (n), and (p) excluded coverage. In its reply, plaintiff alleged that defendant was estopped to deny coverage on any basis other than

[ 403 ]

exclusion (n). The trial judge held exclusion (n) inapplicable, agreed with plaintiff's estoppel argument, and concluded that the loss was the result of property damage as covered by the policy.

The policy provided that the insurer was responsible for

"* * * all sums which the insured shall become legally obligated to pay as damages because of

"* * * * *.

"* * * property damage * * *."

Property damage was defined as follows:

"(1) *physical* injury to or destruction of tangible property * * *." (Emphasis added.)[1]

The stipulation of the parties provided, in part:

"In April of 1974, plaintiff received word that M-K was experiencing problems with the buildings under construction, due to the fact that some of the studs furnished by the plaintiff would require removal from the buildings under construction because of warping,

---

[1]Under "Exclusions" the following was stated:

"This insurance does not apply

"* * * * *.

"(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

"(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

"(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;

"(n) to property damage to the named insured's products arising out of such products or any part of such products;

"* * * * *.

"(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products * * * or of any property of which such products * * * form a part, if such products * * * are withdrawn from the market or from use because of any known or suspected defect or deficiency therein."

twisting, bowing and crooking. It was necessary to remove the defective studs and replace them with nondefective studs.

"* * * * *.

"* * * no part of the plaintiff's claim is for the replacement cost of the studs themselves, and that the plaintiff's claim is for expenses incurred incident to the removal and replacement of the defective studs."

The exhibits, which include the correspondence between the parties, show that plaintiff's attorney wrote to defendant, stating that

"Wyoming Sawmills' coverage claim * * * is only with respect to Item No. 2—expenses incurred in replacing the allegedly defective studs. In other words, Wyoming Sawmills is not making any claim * * * for defects in the product itself, or for replacement of the product itself. The entire claim of $17,888.63 is for consequential damages allegedly sustained by Morrison-Knudsen for labor in removing and replacing the studs. It is Wyoming Sawmills' position that that item is covered by the * * * policy."

This statement is further confirmed by the release taken by plaintiff from North Pacific, which release included the language

"* * * for the expenses incurred in labor to replace the allegedly defective lumber purchased by Morrison-Knudsen for use and construction at Lowry Air Force Base, Colorado."

It is thus evident that the claim is exclusively for labor expense in taking out the defective studs and in replacing them with nondefective ones.

Defendant contends that any expense incurred by the removal and replacement of plaintiff's product is not the result of "property damage" as contemplated by the policy. It contends that the property damage that is covered by the policy is damage occasioned by the defective studs to other property, *i.e.,* the balance of the building, and that the stipulation and exhibits do not demonstrate that the labor expense incurred was occasioned by the repair of such damages.

[ 405 ]

On the other hand, plaintiff contends that the defective studs became integrated into and were made a part of the building and their subsequent warping was damage to the building whether the damage was limited to the studs or not. It cites a series of cases,[2] which are the progeny of *Hauenstein v. St. Paul-Mercury Indem. Co.,* 242 Minn 354, 65 NW2d 122 (1954), which hold that despite the lack of physical damage to the larger entity into which the defective product has been integrated, the value of the larger entity has been depreciated by the defective product which has been integrated into it, and that such depreciation in value constitutes "property damage."

■ Insofar as we can determine, none of the policies involved in the cases on which plaintiff relies contained the same definition of "property damage" as that which is contained in the present policy. The present policy defines property damage as "*physical injury to * * * tangible property.*" (Emphasis added.) Apparently, none of the policies involved in the cases which are the basis for plaintiff's contention included the word "physical." The inclusion of this word negates any possibility that the policy was intended to include "consequential or intangible damage,"[3] such as depreciation in value, within the term "property damage." The intention to exclude such coverage can be the only reason for the addition of the word. As a result, in the absence of a showing that any physical damage was caused to the rest of the building by the defective studs

---

[2] *Goodyear Rub. & Sup. Co., Inc. v. Great American Ins. Co.,* 471 F2d 1343 (9th Cir 1973); *Western Casualty and Surety Co. v. Polar Panel Co.,* 457 F2d 957 (8th Cir 1972); *Arcos Corp. v. American Mutual Liability Inv. Co.,* 350 F Supp 380 (ED Pa 1972); *Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co.,* 51 Cal2d 558, 334 P2d 881 (1959); *United States Fidelity & G. Co. v. American Ins. Co.,* — Ind App —, 345 NE2d 267 (1976); *U.S. Fid. & Guaranty v. Nevada Cement Co.,* Adv Sh 7732, — Nev —, 561 P2d 1335 (1977); *Dakota Block Co. v. Western Cas. & Sur. Co.,* 81 SD 213, 132 NW2d 826 (1965). *Contra, Hamilton Die Cast, Inc. v. United States F & G Co.,* 508 F2d 417 (7th Cir 1975); *Hartford Accident and Indemnity Co. v. Olson Bros., Inc.,* 187 Neb 179, 188 NW2d 699 (1971).

[3] *See* Long, The Law of Liability Insurance § 11.09 (1976 ed.).

and that the labor cost was for the rectification of any such damage, plaintiff cannot recover.

In an attempt at clarity, we wish to state what we do not hold. We do not hold that if damage was occasioned to any part of the building, other than the studs, during the process of replacing the studs, such damage is not covered. Neither do we hold that if damage had occurred to the balance of the building as the result of the defective studs and the only way such damage could have been repaired was to install new studs also (of which there is no evidence), the cost of the labor of such installation would not be covered.

■ This leads us to a problem with the proof in this case concerning whether damage was occasioned to any part of the building other than the studs by the process of replacement. In a letter written by defendant to plaintiff's attorney, the following is found:

"* * * * *.

"There is some indication that in the loss, certain drywall, bottom plates, soffits had to be replaced getting at the 2x4's that may have been bad. * * *."

Apparently, no expense was incurred for damaged material used in the balance of the building occasioned by the replacement of the studs since the claim which plaintiff was forced to pay was for labor only. However, labor attributable to the repair of damage to the balance of the building that necessitated getting to the studs in order to replace them would be labor expended for the repair of physical damage to the building caused by plaintiff's defective product. Seemingly, the parties contemplated that some such inquiry might be important, depending on how the provisions of the policy were construed, because as part of their stipulation they inserted the following:

"If the court decides that part of the $17,888.63 is recoverable by the plaintiff, but cannot decide how much of that amount is recoverable (there being no detailed breakdown included in this stipulation), it shall advise the parties, and a supplemental hearing will be held to

determine what part of the plaintiff's claim is recoverable, and whether attorneys' fees are recoverable in connection with such covered claim."

We hold, therefore, that such portion, if any, of the labor expense for which claim is made as might be attributable to tearing out and putting back other parts of the building (as compared with the labor attributable to the actual removal and replacement of the studs after they have been uncovered) in order to replace the studs is within the coverage of the policy.

■ Because of the possibility of there being a claim for the labor attributable to tearing out and replacing parts of the building other than the studs, it is necessary to determine whether exclusions (m), (n), and (p) would have any application to a claim for such labor. We conclude that they do not, although upon a cursory reading, the contrary might appear. Exclusion (m) concerns *loss of use* of tangible property. There is no claim made for loss of use here. Exclusion (n) applies to property damage to plaintiff's products. Plaintiff makes no claim for damage to the studs. Exclusion (p) precludes losses based upon the *withdrawal from the market of a product* which is expected to be or is found to be defective. It is known as the "sistership" exclusion.[4] It is intended to exclude from coverage the cost of preventative or curative action by withdrawal of a product in situations in which a danger is to be apprehended. Long, Law of Liability Insurance § 11.11 (1976 ed.). The most usual situation today is the recall by automobile manufacturers of vehicles for corrective measures. No such claim is made here.

Plaintiff contends, in effect, that defendant has waived or is estopped from asserting that the loss did not result from "property damage" as contemplated by

---

[4]The term is derived from an occurrence in the aircraft industry in which all airplanes of a certain make and type were grounded by an order of the government because one of them crashed and the others were suspected of having a common structural defect.

the policy because it informed plaintiff, prior to plaintiff's bringing the action, that it was declining to pay the loss on the basis of exclusion (n), which had no application, and it asserted no other basis for denying coverage. Plaintiff bases its contention on the holding in *Ward v. Queen City Fire Ins. Co.,* 69 Or 347, 138 P 1067 (1917). This case contains the following language at 352-53:

"On this point, Mr. Chief Justice MOORE, in *Wyatt v. Henderson,* 31 Or. 48 (48 Pac. 790), credits Mr. Justice SWAYNE, in *Railway Co. v. McCarthy,* 96 U.S. 258 (24 L. Ed. 693), as saying:

" 'Where a party gives a reason for his conduct and decision touching anything in action in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.'

"We see no reason to depart from this rule which is securely rooted in common justice and plainly applicable to the case at bar. After a lapse of some months subsequent to the fire, defendant expressed its declination to meet the terms of the contract of insurance upon the sole ground that certain acts of the plaintiff had increased the hazard of its risk. Accepting this position of defendant's as the battleground, plaintiff employed counsel and initiated this action. By this conduct, defendant led plaintiff to believe that there was but one reason for its denial of liability; consequently, under such circumstances, defendant should not be permitted to screen itself from liability on grounds other than the one specified in the letter indited by its legal representative, provided defendant had informed itself prior to the letter of the cause of the fire, and was in possession of the material which it now claims exculpates it from liability. 'Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness. They may refuse to pay without specifying any ground, and insist upon any available ground, but, when they plant themselves upon a separate defense and so notify the insured, they should not be permitted to retract if the

latter has acted upon their position as announced, and incurred expenses in consequence of it,' said Mr. Chief Justice CHURCH, speaking for the Court of Appeals in *Brink v. Insurance Co.,* 80 N.Y. 108, and quoted with approval in *McCormick v. Insurance Co.,* 163 Pa. 193 (29 Atl. 747)."

No distinction is made in *Ward* between failure to assert that the claim falls within the *insuring clause* originally granting coverage as compared with a failure to assert an *exclusion* from the original grant of coverage. It seems obvious that the rule must be limited to failure to assert an exclusion. Waiver or estoppel cannot be the basis for creating an original grant of coverage where no such contract previously existed. *Schaffer v. Mill Owners Ins. Co.,* 242 Or 150, 156, 407 P2d 614 (1965). Although plaintifff does not admit this distinction in its brief, it has done so by its pleadings, which allege, "The defendant has waived any right to rely upon *any exclusion* other than Exclusion (n)." (Emphasis added.) It is our conclusion that defendant is not estopped from contending nor has it waived the right to contend that plaintiff's loss did not result from property damage as covered by the policy.

The judgment of the trial court is reversed and the case is remanded for the purpose of determining what portion, if any, of the labor costs for which plaintiff paid were attributable to tearing out and replacing portions of the structures (other than the studs) so that the studs could be replaced. If such portion exists, a judgment will be entered for plaintiff by the trial court for that portion. If it does not exist, a judgment will be entered for defendant.