### AETNA CASUALTY AND SURETY CO., a Connecticut corporation, Plaintiff,

v.

### McIBS, INC., a Missouri corporation; ARC Materials Corporation, a Nevada corporation, d/b/a WMK Builders Products; Safety Mutual Casualty Corporation, Defendants.

### No. CV-LV-86-128-HDM.

United States District Court, D. Nevada.

March 30, 1988.

Niels Pearson, Las Vegas, Nev., for plaintiff.

Roger Wirth, Las Vegas, Nev., for ARC Materials.

Gregory T. Hafen, Las Vegas, Nev., for McIbs.

C. Eric Funston, Las Vegas, Nev., for Safety Mut.

## ORDER

McKIBBEN, District Judge.

Aetna Casualty and Surety Company ("Aetna") brought this declaratory judgment action pursuant to 28 U.S.C. § 2201 to determine its obligations as insurer of McIbs, Inc. ("McIbs") for potential liability of McIbs to ARC Materials Corporation, d/b/a WMK Builders Products ("WMK"). Presently before the court are cross motions for summary judgment on behalf of all parties.

During 1982, McIbs developed molds, liners and a patented horizontal core adaptor that could be installed in cement block manufacturing plants to produce a mortarless interlocking concrete block. The resulting block would be stronger and less expensive to make than more conventional blocks.

In the fall of that year, McIbs entered into a contract with one such manufacturer, WMK. Under the contract McIbs would supply and install the molds, liners and core adaptor in WMK's plant; McIbs' representatives would clean and oil the equipment at the end of each day's production; the equipment remained the property of McIbs, and would be removed by McIbs at the expiration of the contract; WMK assumed responsibility for maintaining the quality and dimensional control, under the supervision of McIbs, for the manufacturing of the blocks; McIbs and WMK would cooperate in a sales and advertising campaign to promote the blocks; and WMK would pay for the use of McIbs' equipment based upon a price per block produced formula. WMK supplied the cement and other aggregates used to create the concrete blocks.

WMK began production of the blocks and sold them to its customers for use in building construction. Subsequently, WMK received complaints from some of these purchasers that the blocks were not properly sized. One customer, Marnell Construction, ("Marnell") used the blocks in the Nevada 2–22 project. The blocks were too long or too wide by 1/32nd of an inch. As a result of these dimensional defects Marnell was required to cut some of the blocks to make them fit properly, and stucco the outside walls and plaster the interior walls to cover the joints.

Marnell suffered economic losses through the increased labor costs associated with the cutting of blocks and replastering. WMK settled Marnell's claim by reducing the price charged for the blocks by $145,673.78.

On August 14, 1985 WMK filed suit in state court against McIbs, alleging as damages the losses sustained in connection with the Marnell project. WMK also seeks damages for loss of anticipated profit for the 180,000 unused blocks which are in storage, storage charges, and loss to its business reputation.

Aetna insures McIbs under a comprehensive general liability policy which was in force and effect between September, 1982 and September, 1983. Aetna accepted the defense of McIbs under a reservation of rights. Thereafter, Aetna commenced this action for declaratory relief against McIbs, WMK and Safety Mutual Insurance Company ("Safety Mutual"), another of McIbs' insurers which is the umbrella carrier to McIbs.

The insurance policy between McIbs and Aetna is known as a comprehensive general liability ("CGL") policy. The policy provides in pertinent part that:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or *proper-*

*ty damage* to which this insurance applies, caused by an occurrence.... (emphasis added)

'*property damage*' means (1) *physical injury* to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period. (emphasis added).

The threshold issue for determination is whether WMK has sustained "property damage" within the meaning of the policy. If it did not, Aetna has no liability under the policy of insurance.

WMK's state court complaint alleges damages of $145,673.78 which sum represents a set-off against the amount Marnell owed for the blocks WMK supplied to the Nevada 2–22 project. These set-offs represented increased labor costs and the cost of plaster and stucco material which Marnell expended to compensate for the problems created by missized blocks. There is no evidence there was physical injury or destruction of any property on the Marnell project caused by the blocks. The other damage alleged is loss of anticipated profits from the unused blocks, storage charges and damages for loss of business reputation and loss of business.

Property damage under the policy of insurance here means "physical injury to or destruction of tangible property which occurs during the policy period...." This language is more restrictive than earlier CGL policies which defined property damage as "injury to tangible property." Intangible or consequential damages were included under the terms of the earlier policies. *See Hauenstein v. Saint Paul–Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954).

The inclusion of the word "physical" in this policy was designed to preclude recovery for consequential or intangible damages such as a diminution or depreciation in value. *Triple U. Enterprises v. New Hampshire Ins. Co.,* 576 F.Supp. 798 (W.D.

S.D.1983); *Wyoming Sawmills v. Transportation Ins. Co.,* 282 Or. 401, 578 P.2d 1253 (1978).

In order to recover McIbs must be able to show property belonging to WMK was physically damaged or that property other than the blocks which WMK installed in the Nevada 2–22 project was physically damaged. The evidence does not support such a finding. All of the evidence shows that the damages on the Nevada 2–22 project resulting from the missized blocks supplied by WMK related to the cutting and refitting of the blocks supplied by WMK and for the cost of labor and materials to cover the joints between the blocks. There is no evidence these blocks injured or destroyed any other property. Nor is there evidence that any of the labor or material costs were related to the repair or replacement of any property other than the blocks supplied by WMK.

In addition, the court finds unpersuasive WMK's argument that McIbs physically injured WMK's cement and aggregate which was poured into the McIbs forms. There was no physical injury to the cement or aggregate. While the McIbs forms may have caused a concrete block which was not within acceptable tolerances to have been formed, the forms did not "physically injure" the components. Poor workmanship and an alleged breach of warranty as to size and shape does not constitute "physical injury" within the meaning of the policy of insurance here.

McIbs' reliance on *Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co.,* 740 F.2d 647 (8th Cir.1984) is misplaced. In *Missouri Terrazzo,* the insured installed defective terrazzo floors in a supermarket. Subsequently, the floors began to crack and discolor. The Circuit Court held such injury fell within the terms of the policy, because there was actual physical damage to the floor. As the court observed, the cracking and "physical deterioration of the floor is manifest." *Id.* at 650.

Here, there was no cracking or physical deterioration of the blocks installed by WMK or of other portions of the building in which the blocks were installed. Rather,

the blocks simply were not of the shape and size intended. Moreover, the diminution in value of the building present in *Missouri Terrazzo* was directly related to the actual physical damage to the floor. Here no physical damage occurred on the Nevada 2–22 project or to the blocks themselves.

The CGL policy was not intended to protect the insured against contractual liability for defective goods (i.e., the molds and liners used to form the blocks), workmanship or design. Unless there was actual physical injury to the property of WMK, which the evidence discloses was absent, it cannot be asserted the parties had a reasonable expectation of coverage under the policy. A policy of comprehensive general liability insurance does not create in the insured a commercially reasonable expectation that the policy will cover a loss caused by breach of contract, breach of warranty, poor workmanship or improper design. This policy was not a guarantee or contractual performance bond. Such was not the contemplation of the parties nor should the policy be so construed by the court.

Accordingly, as to the claims asserted by WMK against McIbs, the court concludes WMK has not suffered "property damage" within the meaning of the insurance policy between McIbs and Aetna. Therefore the court need not consider whether exclusions contained in the insurance policy would bar coverage.

The motion of plaintiff Aetna Casualty and Surety Company for Summary Judgment is GRANTED. The motions of defendants McIbs, Inc., ARC Materials Corporation, d/b/a WMK Builders Products, and Safety Mutual Casualty Corporation for summary judgment are DENIED.

IT IS SO ORDERED.