**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE OREGON CLINIC, PC, an
Oregon professional corporation,

*Plaintiff-Appellant,*

v.

FIREMAN'S FUND INSURANCE
COMPANY, a California corporation,

*Defendant-Appellee.*

No. 22-35047

D.C. No.
3:21-cv-00778-SB

ORDER
CERTIFYING
QUESTION TO
THE OREGON
SUPREME
COURT

Filed April 10, 2023

Before: Mary H. Murguia, Chief Judge, and Danielle J.
Forrest and Jennifer Sung, Circuit Judges.

Order

## SUMMARY[*]

### Certification Order / Oregon Law

The panel certified the following question to the Oregon Supreme Court:

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute "direct physical loss or damage to property" for purposes of coverage under a commercial property insurance policy?

### COUNSEL

Seth H. Row (argued) and Katelyn J. Fulton, Miller Nash LLP, Portland, Oregon; Jodi S. Green, Miller Nash LLP, Long Beach, California; Iván Resendiz Gutierrez, Miller Nash LLP, Portland, Oregon; for Plaintiff-Appellant.

Brett D. Solberg (argued), DLA Piper LLP (US), Houston, Texas; Anthony Todaro and Joseph D. Davison, DLA Piper LLP (US), Seattle, Washington; for Defendant-Appellee.

James M. Davis, Perkins Coie LLP, Seattle, Washington; Stephen M. Feldman, Perkins Coie LLP, Portland, Oregon; Bradley H. Dlatt, Perkins Coie LLP, Chicago, Illinois; for Amicus Curiae United Policyholders.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

We respectfully ask the Oregon Supreme Court to answer the certified question presented below, pursuant to Oregon Revised Statutes § 28.200, because we have concluded that resolution of this question of Oregon law "may be determinative of the cause then pending in [this] court," and "[t]here is no controlling precedent" in the decisions of the Oregon Supreme Court or the Oregon Court of Appeals.

This case involves an insured who sued for breach of contract and for breach of the implied duty of good faith and fair dealing when its insurer denied coverage for business income losses that the insured incurred during the COVID-19 pandemic. The insured alleged that the COVID-19 virus was present on its premises and that state government closure orders prevented it from fully making use of its insured property due to infections and prohibitions on elective medical procedures. The insured therefore sought to recoup lost business income under several provisions of its commercial property insurance policy that require "direct physical loss or damage to property" to trigger coverage. The insured alleged that it suffered "direct physical loss or damage to property" because of COVID-19 and, in the alternative, state government orders. The district court dismissed the insured's suit for failure to state a claim.

The issue here is whether the insured's allegations regarding COVID-19 and the state government orders, if taken as true, are sufficient to show "direct physical loss or damage to property" under Oregon law.

# I.

We offer the following statement of relevant facts, taken from the Oregon Clinic's complaint, and explanation of the "nature of the controversy in which the question[] arose." Or. Rev. Stat. § 28.210(2).  The Oregon Clinic, PC (Oregon Clinic) is a medical provider with fifty-seven locations in Portland.  Before the pandemic, Oregon Clinic purchased a commercial property insurance policy from Fireman's Fund that provides Oregon Clinic with coverage for business income lost because of "direct physical loss or damage" to its property.  In addition to its commercial property policy, Oregon Clinic purchased additional specialty coverages from the Fireman's Fund (together "the Policy").  The Policy was effective at all times material to Oregon Clinic's COVID-19 allegations, including March 2020.

Between March and November 2020, "approximately twenty-two" of its "employees or patients . . . confirmed they were infected with the [COVID-19] virus while they were on [its] premises."  And, given the asymptomatic spread and the large numbers of people that congregate near Oregon Clinic's offices, it is "statistically certain or near-certain that the [COVID-19] virus was continuously dispersed into the air and on physical surfaces and other property in, on, and within 1,000 feet of the Oregon Clinic's offices, in early March 2020, and thereafter."  Accordingly, "[t]he continuous dispersal of the [COVID-19] virus into the air and onto physical surfaces and other property rendered . . . Oregon Clinic's cleaning practices ineffective," which required Oregon Clinic to make "physical and other changes" to its property and practices.  Additionally, various state government orders required Oregon Clinic to stop performing non-urgent health care procedures and "had the effect of restricting or eliminating the ability of . . . Oregon

Clinic to use its facilities."  The pandemic and government orders negatively impacted Oregon Clinic's business income.  For example, by mid-March 2020, Oregon Clinic's patient visits dropped from 1,800 to 300 daily patient visits. Oregon Clinic was also forced to spend money on "purchas[ing] and alter[ing]" business personal property to "minimize the suspension" of its operations and "preserve and protect" its property.  Oregon Clinic's net revenue dropped by $20,170,000.

On or around March 17, 2020, Oregon Clinic sought and was denied coverage from Fireman's Fund.  In response, Oregon Clinic sued Fireman's Fund in the United States District Court of Oregon seeking a declaration of coverage and alleging claims for breach of contract and the breach of the implied duty of good faith and fair dealing for no less than $20,647,000.  Oregon Clinic asserted coverage under ten Policy provisions, each of which expressly requires "direct physical loss or damage" to property.  The Policy does not define "direct physical loss or damage."

In its complaint, Oregon Clinic alleged its insured locations suffered direct physical loss or damage to property as a result of COVID-19 and, in the alternative, the government orders.  Oregon Clinic included over ten pages of allegations in its complaint about the nature of COVID-19.  For example, Oregon Clinic alleged that COVID-19 is caused by a highly contagious virus that causes illness and death in humans, is spread by asymptomatic carriers, survives for up to twenty-eight days on a variety of surfaces, and cannot be eliminated from property by routine cleaning.

The district court granted Fireman's Fund's motion to dismiss without leave to amend.  *Oregon Clinic, PC v. Fireman's Fund Ins. Co.*, No. 3:21-CV-00778-SB, 2021 WL

5921370, at *1 (D. Or. Dec. 15, 2021).  The district court relied on "a long line of cases" from district courts in the Ninth Circuit, including the District Court of Oregon, and from federal appellate courts, including the Ninth Circuit, in which the courts held "neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage."  *Id*. at *4 & n.5 (internal quotation marks and citation omitted).  Based on these cases, the district court concluded Oregon Clinic did not plausibly allege that either COVID-19 or the governmental orders caused "direct physical loss or damage" to its property, because Oregon Clinic did not allege its property had been damaged in a manner that required it to "suspend operations to conduct repairs or replace any insured property."  *Id.* at *8.  Rather, the district court determined Oregon Clinic's alleged losses were purely economic.  *Id.* at *9.

## II.

Because Oregon law governs interpretation of the policy and the Oregon Supreme Court has not yet considered the issue, "we must determine what result [the Oregon Supreme Court] would reach based on state appellate court opinions, statutes and treatises."  *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am*., 15 F.4th 885, 889 (9th Cir. 2021) (quoting *Diaz v. Kubler Corp*., 785 F.3d 1326, 1329 (9th Cir. 2015)).  "We will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law."  *Id*. (quoting *Tomlin v. Boeing Co*., 650 F.2d 1065, 1069 n.7 (9th Cir. 1981)).  Here, however, no intermediate appellate court has interpreted "direct physical loss or property" as it pertains to COVID-19 and a commercial property insurance policy.

Though the Oregon Supreme Court has not interpreted the phrase at issue, it has interpreted the word "physical" in the context of a liability insurance policy and determined that the policy excluded coverage for consequential or intangible damages. *See Wy. Sawmills, Inc. v. Transp. Ins.*, 578 P.2d 1253, 1256 (Or. 1978). In *Wyoming Sawmills*, a lumber manufacturer sold a lumber company defective studs that were used in a building. *Id*. at 1254–55. The lumber manufacturer settled with the lumber company by covering the labor expenses involved in replacing the defective studs. *Id*. at 1255. The lumber manufacturer then sought to recover the cost of the labor expenses under its general liability insurance. *Id*. The policy defined property damage as "physical injury . . . to tangible property." *Id*. at 1256.

In interpreting the policy, the Oregon Supreme Court determined that "[t]he inclusion of [the] word ['physical'] negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'" *Id*. The court therefore concluded that the lumber manufacturer was not entitled to coverage under the policy because it did not show "any physical damage was caused to the rest of the building by the defective studs and that the labor cost was for the rectification of any such damage . . . ." *Id*.

The Oregon Court of Appeals later distinguished *Wyoming Sawmills* when interpreting the phrase "direct physical loss" in an all-risk homeowner's policy. *See Farmers Ins. Co. v. Trutanich*, 858 P.2d 1332, 1335 (1993). In *Trutanich*, the Oregon Court of Appeals construed an all-risk homeowner's policy to find that a pervasive odor was a "direct physical loss." *Id*. at 1335. There, the policyholder's tenant had covertly constructed a methamphetamine lab in

the basement.  *Id*. at 1334.  The court rejected the insurer's argument that the residual methamphetamine odor and the cost of removing it was not a "physical" loss, finding that the "odor was 'physical' because it damaged the house."  *Id*. The court found *Wyoming Sawmills* distinguishable because the plaintiff in *Trutanich* was not requesting coverage for consequential damages that did not physically damage the insured property.  *Id.* at 1335.  Instead, in *Trutanich* there was evidence that the house was "'physically damaged' by the odor that persisted in it" and "[t]he cost of removing that odor was a direct rectification of that problem."  *Id*.

The above two cases appear to be the only Oregon state court cases that offer guidance as to how the Oregon Supreme Court would interpret the phrase "direct physical loss or damage."  For this reason, most of the federal district courts in Oregon tasked with interpreting the phrase "direct physical loss or damage," including the district court here, have relied on *Wyoming Sawmills* and *Trutanich*.  *See, e.g*., *Dakota Ventures, LLC v. Or. Mut. Ins. Co.*, 553 F. Supp. 3d 848, 858 (D. Or. 2021); *Nari Suda LLC v. Or. Mut. Ins. Co*., 558 F. Supp. 3d 1017, 1027 (D. Or. 2021), appeal filed No. 21- 35846 (9th Cir. Oct. 7, 2021).

However, no Oregon appellate court, state statute, or treatise has yet interpreted the phrase "direct physical loss or damage" in the context of a commercial property insurance policy dispute involving COVID-19 allegations.  Therefore, we find it prudent to allow the Oregon Supreme Court to do so in this instance.  Particularly, certifying this question of unresolved state law is appropriate because the answer "may be determinative of the cause then pending in [this] court . . . ."  Or. Rev. Stat. § 28.200.  Indeed, if Oregon Clinic's allegations of the presence or potential presence of the COVID-19 virus are sufficient to show "direct physical loss

or damage to property," the district court erred in dismissing Oregon Clinic's complaint for failure to state a claim, and we would remand to the district court for further proceedings. Alternatively, if Oregon Clinic's COVID-19 allegations are not sufficient to show "direct physical loss or damage to property," we would affirm the district court.

## III.

In light of the foregoing discussion, and because the answer to this question "may be determinative of the cause then pending in [this] court," Or. Rev. Stat. §28.200, we respectfully certify to the Oregon Supreme Court the following question:

> Can the actual or potential presence of the COVID-19 virus on an insured's premises constitute "direct physical loss or damage to property" for purposes of coverage under a commercial property insurance policy?

We do not intend our framing of this question to restrict the Oregon Supreme Court's consideration of any issues that it determines are relevant. If the Oregon Supreme Court decides to consider the certified question, it may in its discretion reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

The clerk of our court is hereby ordered to transmit to the Oregon Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record, along with a certificate of service on the parties. Or. Rev. Stat. § 28.215; Or. R. App. P. 12.20.

Further proceedings in our court are stayed pending the Oregon Supreme Court's decision on whether it will accept review, and if so, receipt of the answer to the certified question.  This case is withdrawn from submission until further order from this court.  The Clerk is directed to administratively close this docket, pending further order.

The panel will resume control and jurisdiction over the certified question upon receiving an answer to the certified question or upon the Oregon Supreme Court's decision to decline certification.  Within 10 days after the Oregon Supreme Court decides whether or not to accept the certified question, the parties shall file a joint report informing this court of the decision.  If the Oregon Supreme Court accepts the certified question, the parties shall file a joint status report every six months after the date of the acceptance, or more frequently if circumstances warrant.

**QUESTION CERTIFIED; PROCEEDINGS STAYED.**

/s/ Mary H. Murguia
Chief Judge Mary H. Murguia
U.S. Court of Appeals for the Ninth Circuit