**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

THE OREGON CLINIC, PC, an
Oregon professional corporation,

*Plaintiff-Appellant*,

v.

FIREMAN'S FUND INSURANCE
COMPANY, a California corporation,

*Defendant-Appellee*.

No. 22-35047

D.C. No. 3:21-cv-
00778-SB

OPINION

Appeal from the United States District Court
for the District of Oregon
Stacie F. Beckerman, Magistrate Judge, Presiding

Argued and Submitted February 9, 2023
Submission Vacated April 10, 2023
Resubmitted July 25, 2023
Portland, Oregon

Filed July 31, 2023

Before: Mary H. Murguia, Chief Judge, and Danielle J.
Forrest and Jennifer Sung, Circuit Judges.

Opinion by Chief Judge Murguia

# SUMMARY[*]

## Diversity/COVID-19 Business Losses

The panel affirmed the district court's dismissal for failure to state a claim of medical provider Oregon Clinic's complaint alleging that its insurer, Fireman's Fund Insurance Company, improperly denied coverage for losses it sustained because of the COVID-19 pandemic.

The insurance policy provided Oregon Clinic with coverage for reduction of business income only if its insured property suffered "direct physical loss or damage." Oregon Clinic alleged that it suffered "direct physical loss or damage" because of the COVID-19 pandemic and related governmental orders that prevented it from fully making use of its insured property. Fireman's Fund denied coverage and Oregon Clinic sued, asserting claims for breach of contract and breach of the implied duty of good faith and fair dealing.

The panel certified to the Oregon Supreme Court the interpretation of "direct physical loss or damage" under Oregon law and stayed proceedings. The Oregon Supreme Court declined the certification request. The panel held that the Oregon Supreme Court would interpret "direct physical loss or damage" to require physical alteration of property, consistent with the interpretation reached by most courts nationwide. Because Oregon Clinic failed to state a claim under this interpretation, and because amendment would be futile, the panel affirmed the district court's judgment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Seth H. Row (argued), Iván Resendiz Gutierrez, and Katelyn J. Fulton, Miller Nash LLP, Portland, Oregon; Jodi S. Green, Miller Nash LLP, Long Beach, California; for Plaintiff-Appellant.

Brett D. Solberg (argued), DLA Piper LLP (US), Houston, Texas; Joseph D. Davison and Anthony Todaro, DLA Piper LLP (US), Seattle, Washington; for Defendant-Appellee.

James M. Davis, Perkins Coie LLP, Seattle, Washington; Bradley H. Dlatt, Perkins Coie LLP, Chicago, Illinois; Stephen M. Feldman, Perkins Coie LLP, Portland, Oregon; for Amicus Curiae United Policyholders.

## OPINION

MURGUIA, Chief Circuit Judge:

This appeal arises out of a commercial property insurance policy ("Policy") that Oregon Clinic, P.C. ("Oregon Clinic") purchased from Fireman's Fund Insurance Company ("Fireman's Fund"). The Policy provides Oregon Clinic, a medical provider with more than fifty locations in Oregon, with coverage for reduction of business income only if its insured property suffers "direct physical loss or damage." In March 2020, after the COVID-19 pandemic began, Oregon Clinic, like hundreds of other insured businesses nationwide, sought coverage under its Policy. It alleged that it suffered "direct physical loss or damage" because of the COVID-19 pandemic and related

governmental orders that prevented it from fully making use of its insured property.  Fireman's Fund denied coverage.

Oregon Clinic then sued Fireman's Fund in the United States District Court for the District of Oregon, asserting claims for breach of contract and breach of the implied duty of good faith and fair dealing.  As most courts nationwide have done when faced with similar complaints, the District Court dismissed with prejudice Oregon Clinic's complaint under Federal Rule of Civil Procedure 12(b)(6).  Oregon Clinic timely appealed.  At Oregon Clinic's request, we certified to the Oregon Supreme Court the interpretation of "direct physical loss or damage" under Oregon law and stayed proceedings.  The Oregon Supreme Court declined our certification request.

We reassume jurisdiction pursuant to 28 U.S.C. § 1291 and conclude that the Oregon Supreme Court would interpret "direct physical loss or damage" to require physical alteration of property, consistent with the interpretation reached by most courts nationwide.  Because Oregon Clinic fails to state a claim under this interpretation, and because amendment would be futile, we affirm the District Court's judgment.

## I.

"[W]e accept the factual allegations of the complaint as true and construe them in the light most favorable to [Oregon Clinic]." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) (first alteration in original) (citations omitted).

Oregon Clinic is a medical provider with fifty-seven locations in the Portland, Oregon metro area.  Like it did to most businesses, the COVID-19 pandemic severely

impacted Oregon Clinic.  As alleged in Oregon Clinic's complaint, between March and November 2020, "approximately twenty-two" of Oregon Clinic's "employees or patients . . . confirmed they were infected with the [COVID-19] virus while they were on [its] premises."  And, given the virus's asymptomatic spread and the large number of people who congregate in Oregon Clinic's offices, it is "statistically certain or near-certain that the [COVID-19] virus was continuously dispersed into the air and on physical surfaces and other property in, on, and within 1,000 feet of [t]he Oregon Clinic's offices, in early March 2020, and thereafter."  Accordingly, "[t]he continuous dispersal of the [COVID-19] virus into the air and onto physical surfaces and other property rendered . . . Oregon Clinic's cleaning practices ineffective . . . , requiring physical and other changes" to its property and practices.  Making matters worse for Oregon Clinic's business operations, Oregon Governor Kate Brown issued a series of orders that required Oregon Clinic, and all other health clinics, to stop performing non-urgent healthcare procedures.  These orders restricted or eliminated Oregon Clinic's ability to use its facilities.

The pandemic and governmental orders had a detrimental effect on Oregon Clinic's business income.  For example, by mid-March 2020, Oregon Clinic's daily patient visits had dropped from over 1,800 to as low as 300.  Oregon Clinic was also forced to spend money on "purchas[ing] and alter[ing] business personal property" to "minimize the suspension" of its operations and "preserve and protect" its property.  Oregon Clinic's "net revenue[] dropped by $20,170,000" while it completed these changes.

Before the pandemic, Oregon Clinic purchased a commercial property insurance policy from Fireman's Fund

that provides Oregon Clinic with coverage for business income lost because of "direct physical loss or damage" to its property. As part of the Policy, Oregon Clinic also purchased additional specialty coverages from Fireman's Fund. The Policy was effective at all times material to Oregon Clinic's COVID-19 allegations, including in March 2020. Of major import here, coverage under each Policy provision expressly requires "direct physical loss or damage" to property. The Policy, however, does not define "direct physical loss or damage."

On or about March 17, 2020, Oregon Clinic provided timely written notice to Fireman's Fund of its insurance coverage claims related to COVID-19 and the governmental orders. Fireman's Fund performed a limited investigation of Oregon Clinic's claim and concluded that there was no "direct physical loss or damage to property at Oregon Clinic's locations or within 1,000 feet of such locations," as required by the Policy. On or about May 13, 2020, Fireman's Fund denied coverage.

In response, Oregon Clinic sued Fireman's Fund in the United States District Court for the District of Oregon, seeking a declaration of coverage and alleging claims for breach of contract and breach of the implied duty of good faith and fair dealing. Oregon Clinic asserted coverage under ten Policy provisions: (1) Property Coverage; (2) Business Income and Extra Expense Coverage; (3) Business Access Coverage; (4) Civil Authority Coverage; (5) Dependent Property Coverage; (6) Expediting Expense Coverage; (7) Extended Business Income and Extra Expense Coverage; (8) Communicable Disease Coverage; (9) Ordinance or Law Coverage; and (10) Loss Adjustment Expense Coverage.

In its complaint, Oregon Clinic alleged that its insured locations suffered direct physical loss or damage to property because of COVID-19 and, in the alternative, the governmental orders. Oregon Clinic also included more than ten pages of allegations in its complaint about the nature of COVID-19. For example, Oregon Clinic alleged that COVID-19 is caused by a highly contagious virus that causes illness and death in humans, is spread by asymptomatic carriers, survives for up to twenty-eight days on a variety of surfaces, and cannot be eliminated from property by routine cleaning.

The District Court granted Fireman's Fund's motion to dismiss without granting Oregon Clinic leave to amend. The District Court relied on a long line of cases from district courts in the Ninth Circuit, including the District Court of Oregon, and from federal appellate courts, including the Ninth Circuit, in which courts held that "neither COVID-19 nor the governmental orders associated with it cause or constitute property loss or damage for purposes of insurance coverage." *Out W. Rest. Grp. Inc. v. Affiliated FM Ins. Co.*, 527 F. Supp. 3d 1142, 1148 (N.D. Cal. 2021), *aff'd and remanded*, No. 21-15585, 2022 WL 4007998 (9th Cir. Sept. 2, 2022). Persuaded by this authority, the District Court concluded that Oregon Clinic did not plausibly allege that COVID-19 or the governmental orders caused "direct physical loss or damage" to its property because Oregon Clinic did not allege its property had been damaged in a manner that required it to "suspend operations to conduct repairs or replace any insured property." Rather, the District Court determined Oregon Clinic's alleged losses were purely economic.

Oregon Clinic timely appealed the District Court's order. Oregon Clinic also filed a separate motion asking this Panel

to certify several questions to the Oregon Supreme Court on the definition of the phrase "direct physical loss or damage" to property.   We granted the certification request after hearing oral argument in this case and stayed the proceedings pending a response from the Oregon Supreme Court.  The Oregon Supreme Court declined our request.

## II.

### A.

We review de novo the District Court's order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Mudpie*, 15 F.4th at 889.

We have diversity jurisdiction over this dispute and must apply Oregon law to interpret the Policy.  *Alexander Mfg., Inc. Emp. Stock Ownership Plan & Tr. v. Ill. Union Ins. Co.*, 560 F.3d 984, 986 (9th Cir. 2009).   Under Oregon Law, "[t]he interpretation of an insurance policy is a question of law," which is reviewed de novo.  *N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739, 741 (Or. 2001).  When an insurance policy does not define the phrase in question, as is the case here, we must "first consider whether the phrase in question has a plain meaning."  *Holloway v. Rep. Indem. Co. of Am.*, 147 P.3d 329, 333 (Or. 2006).  If it does, we apply that meaning and conduct no further analysis.  *Id.*  But if the phrase has more than one plausible interpretation, we "examine the phrase in light of 'the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole.'"  *Id.* at 333–34 (citation omitted) (alteration in original).  If ambiguity remains, then it is "resolved against the insurance company."  *Id*. at 334 (citation omitted).

"When interpreting state law, we are bound to follow the decisions of the state's highest court, and when the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Mudpie*, 15 F.4th at 889 (citation omitted).  "We will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law, unless we find convincing evidence that the state's supreme court likely would not follow it." *Id*. (cleaned up).

## B.

The outcome of Oregon Clinic's suit hinges on the meaning of "direct physical loss or damage" in the Policy. The Parties dispute whether Oregon Clinic adequately alleged a "direct physical loss or damage" to property under the Policy, and they offer competing interpretations of that phrase.  Fireman's Fund contends that "[t]o establish direct physical loss or damage to property, an insured must have suffered a distinct, demonstrable physical alteration to property that requires repair or replacement."  Oregon Clinic, on the other hand, argues "loss" and "damage" mean different things, and that "loss" can mean "the impairment and loss of the functional use of insured property for its intended purpose (as medical clinics) due to the Coronavirus and/or the governmental orders."  In other words, Oregon Clinic argues that it need not allege "physical alteration to property" to adequately allege a "direct physical loss or damage" to property under the Policy.  A plain reading of the Policy as a whole, Oregon caselaw, and a plethora of state and federal appellate decisions in COVID-19 insurance cases, including our decision in *Mudpie*, support Fireman's Fund's position.

Though the Oregon Supreme Court has not interpreted the phrase "direct physical loss or damage," the Oregon Supreme Court and Oregon Court of Appeals have interpreted similar coverage provisions. Most notably, in *Wyoming Sawmills, Inc. v. Transportation Insurance Co.*, the Oregon Supreme Court interpreted the word "physical" in the context of a liability insurance policy and determined the policy excluded coverage for consequential or intangible damages. 578 P.2d 1253, 1256 (Or. 1978).

In *Wyoming Sawmills*, a lumber manufacturer sold defective studs to a lumber company for the construction of buildings. *Id*. at 1254–55. The lumber manufacturer settled with the lumber company by covering the labor expenses involved in replacing the defective studs. *Id*. at 1255. The lumber manufacturer then sought to recover the cost of the labor expenses under its general liability insurance policy. *Id*. The policy defined property damage as "physical injury . . . to tangible property." *Id*. at 1256 (alteration in original).

In interpreting the policy, the Oregon Supreme Court determined that "[t]he inclusion of [the] word ['physical'] negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'" *Id*. The Court therefore concluded the lumber manufacturer was not entitled to coverage under the policy because it did not show that "any physical damage was caused to the rest of the building by the defective studs and that the labor cost was for the rectification of any such damage." *Id*.

The Oregon Court of Appeals' decision in *Farmers Insurance Co. of Oregon v. Trutanich*—on which Oregon Clinic relies for support—is also instructive. 858 P.2d 1332

(Or. 1993).  In *Trutanich*, the policyholder rented his house to a tenant who covertly constructed a methamphetamine lab in the basement.  *Id*. at 1334.  The court rejected the insurer's argument that the residual methamphetamine odor was not physical and that the cost of removing it was not a "direct physical loss."  *Id*. at 1335.  The court held instead that the "odor was 'physical,' because it damaged the house."  *Id*.

The Oregon Court of Appeals determined *Wyoming Sawmills* was distinguishable because the policyholder in *Trutanich* was not requesting coverage for consequential damages that did not physically damage the insured property.  *See id.* at 1335.  Instead, in *Trutanich*, "[t]here [was] evidence that the house was 'physically damaged by the odor that persisted in it," and that "[t]he cost of removing that odor was a direct rectification of that problem."  *Id*.

The *Trutanich* court also relied on *Western Fire Insurance Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (en banc), a Colorado Supreme Court decision involving an insurance policy provision that covered physical loss.  In *Western Fire*, a church had to close its building because of contamination and damage from gasoline and corresponding vapors.  *Id*. at 36.  The *Trutanich* court explained that *Western Fire* "expressly rejected . . . that the loss was simply a 'loss of use,' and held that it was 'a direct physical loss' within the meaning of the policy." *Trutanich*, 858 P.2d at 1336 (quoting *Western Fire*, 437 P.2d at 52).  The Oregon Court of Appeals therefore "[s]imilarly" concluded that the "cost of removing the [methamphetamine] odor [was] a direct physical loss."  *Id*.

*Trutanich* provides us with three useful guiding principles.  *First*, it acknowledges a distinction between "loss of use" and "direct physical loss."  *See id*. at 1335−36.

*Second*, and contrary to Oregon Clinic's position, *Trutanich* signals that some sort of physical damage is required to trigger coverage under a "direct physical loss" provision. *See id*.  *Third*, it emphasizes that costs associated with removal or repair of physical damage are indicative of a "direct physical loss." *See id*.

Together, *Trutanich* and *Wyoming Sawmills* suggest the Oregon Supreme Court would interpret the phrase "direct physical loss or damage" as requiring some physical alteration or damage to property such that "loss of use" is insufficient to trigger coverage under the Policy.  Indeed, as the District of Oregon pertinently noted when tasked with interpreting the same phrase, "[h]ere, like the policies in *Wyoming Sawmills* and *Farmers Insurance*, the inclusion of the word 'physical' confers the plain meaning that any 'loss of or damage to' the property must be physical in nature." *Zeco Dev. Grp., LLC v. First Mercury Ins. Co.*, No. 3:21-CV-406-SI, 2022 WL 444400, at *4 (D. Or. Feb. 14, 2022); *see also Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, No. 90-35654, 1992 WL 16749, at *1 (9th Cir. 1992) (affirming Oregon district court's interpretation of "direct physical loss" based on *Wyoming Sawmills* and concluding that "consequential loss caused by the necessity of cleaning up the asbestos" is not "direct physical loss"). Contrary to Oregon Clinic's position, loss of only the intended use of the property—as opposed to a total dispossession of the property—is not a "direct physical loss." *Zeco*, 2022 WL 444400, at *4.

## C.

Our conclusion that the Oregon Supreme Court would construe the phrase "direct physical loss or damage" as requiring an insured to allege physical alteration of its

property is also consistent with the conclusion reached in more than 800 cases nationwide, including decisions from the federal courts of appeal and state supreme courts.[1] *See Mudpie*, 15 F.4th at 892 ("Our conclusion that California courts would construe the phrase 'physical loss of or damage to' as requiring an insured to allege physical alteration of its property is consistent with conclusions reached by other courts."); *see also Q Clothier New Orleans, LLC v. Twin City Fire Ins. Co*., 29 F.4th 252, 258 (5th Cir. 2022) ("The Louisiana Supreme Court has not opined on [the meaning of "direct physical loss or damage to property"], but other courts have interpreted similar language.  And we find these other courts' analyses persuasive here.").

Moreover, we have recently affirmed the dismissal of a similar complaint under California law. *Mudpie*, 15 F.4th at 893.  In *Mudpie*, a children's store operator brought a putative class action against an insurer alleging that it had suffered "direct physical loss of or damage to property"

---

[1] *See* Covid Coverage Litigation Tracker, University of Pennsylvania School of Law, https://cclt.law.upenn.edu/ [https://perma.cc/B994-JXHP] (Showing that, as of May 25, 2023, 819 suits raising similar claims to Oregon Clinic have been dismissed with prejudice by federal and state courts).

Oregon Clinic argues most of these cases relied on the same "discredited 'Couch on Insurance' treatise"—10A *Couch on Insurance* § 148:46 (3d ed. 2021)—to support the coverage requirement of "physical alteration."  Oregon Clinic believes this treatise is now discredited because the "lead author" has "retreated" from this position "in no less than three published articles."  That is an overstatement.  The lead author, Steven Plitt, has since updated the treatise, which remains consistent on its position that "intangible" losses are excluded from the "direct physical loss or damage" requirement.  *See* 10A *Couch on Insurance* § 148:46 (3d ed. Supp. 2023).  And, needless to say, the articles that Oregon Clinic cites are not binding law.

because of California's shelter-in-place orders.  *Id*. at 887–89.  We determined that California law requires "physical alteration of property" to obtain coverage under the policy.  *Id*. at 892.  Because the plaintiff had not alleged any actual "physical alteration" of its property, we affirmed the dismissal of the plaintiff's complaint.  *Id*. at 892–93.**[2]**

We also concluded that interpreting the phrase "direct physical loss or damage to" property as requiring physical alteration of property was consistent with other provisions of the policy in *Mudpie*.  *Id.* at 892.  Similar provisions are also present here.  For example, like the policy in *Mudpie*, the Policy here provides coverage for "the actual loss of **business income** and necessary **extra expense** . . . sustaine[d] due to the necessary suspension of . . . operations during the **period of restoration** arising from direct physical loss or damage to property[.]"  The Policy defines "period of restoration" as ending on "[t]he date when such property . . . should be repaired, rebuilt, or replaced with reasonable speed and like kind and quality[,]" or "[t]he date when business is resumed at a new permanent location."  When interpreting the same phrase under California law in *Mudpie*, we concluded that the same definition of "period of restoration" "suggests the Policy contemplates providing coverage only if there are physical alterations to the property."  *Mudpie*, 15 F.4th at 892.  To conclude otherwise

---

[2] Since our decision in *Mudpie*, we have certified the interpretation of "direct physical loss of or damage to property" to the California Supreme Court because the California intermediate appellate courts subsequently split on this issue.  *See Another Planet Ent., LLC v. Vigilant Ins. Co*., 56 F.4th 730, 731 (9th Cir. 2022).  The California Supreme Court granted the certification request, but it has yet to issue a decision.  *See Another Planet Ent. v. Vigilant Ins. Co.*, No. S277893 (Cal. 2023).

"would render the 'period of restoration' clause superfluous." *Id*.

Most federal courts of appeal presented with similar COVID-19 insurance disputes have dismissed the complaints for the same reason: the plaintiffs failed to allege that COVID-19 physically alters the insured property.[3] Indeed, the Fifth and Seventh Circuits have affirmed dismissals of COVID-19 complaints made against Fireman's Fund, the same defendant in this case, based on the same policy language. In *Circle Block Partners, LLC v. Fireman's Fund Insurance Co.*, a hotel operator alleged COVID-19 caused its insured property to suffer "direct physical loss or damage" because "SARS-CoV-2 particles

---

[3] *See, e.g.*, *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401–03 (6th Cir. 2021) (applying Ohio law and explaining that "[e]ven when called 'all-risk' policies, as these policies sometimes are, they still cover only risks that lead to tangible 'physical' loss or damages," and noting that all-risk "policies do not typically apply to losses caused by government regulation"); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *1–3 (11th Cir. Aug. 31, 2021) (applying Georgia law and noting that the policy provisions applied "only if the events alleged here—the COVID-19 pandemic and related shelter-in-place order—caused direct 'accidental physical loss' or 'damage' to the [covered] property," explaining that "there must be 'an actual change in insured property' that either makes the property 'unsatisfactory for future use' or requires 'that repairs be made,'" holding that the insured failed to state a claim, and noting that the court could not "see how the presence of [viral] particles would cause physical damage or loss to the property" (citation omitted)); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143–45 (8th Cir. 2021) (applying Iowa law and considering whether the pandemic and government orders resulted in "accidental physical loss or accidental physical damage" to business property, interpreting the policy to require direct physical loss or physical damage, and concluding that "there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction").

physically altered and damaged [its property] by adding material matter (dangerous viral particles) to the surfaces that was not there before." 44 F.4th 1014, 1022 (7th Cir. 2022). The Seventh Circuit affirmed the dismissal of the complaint, noting the plaintiff's "broad definition would seem to extend coverage to any situation where 'material matter' is added to a surface," even a "sneeze." *Id*. at 1023.

In *PS Business Management, LLC v. Fireman's Fund Insurance Co*., the plaintiffs argued, like Oregon Clinic does here, that their "claim for coverage survives because they've alleged that their property *was* physically damaged by COVID-19." No. 21-30723, 2022 WL 2462065, at *3 (5th Cir. July 6, 2022). Specifically, the plaintiffs—business consulting professionals—alleged they "lost valuable merchandise, business records, and the property of certain clients as a result of COVID-19 contamination." *Id*. The Fifth Circuit affirmed dismissal of the complaint, adopting the Sixth Circuit's observation that COVID-19 is "a virus that injures people, not property." *Id*. (quoting *Santo's Italian Café*, 15 F.4th at 403). We agree and conclude the same here.

## D.

Applying the interpretation of "direct physical loss or damage" we predict the Oregon Supreme Court would adopt, we conclude that Oregon Clinic has not adequately alleged its property suffered such loss or damage.

Indeed, Oregon Clinic does not allege its property was lost or damaged by the virus in a manner that required it to conduct repairs or replace its property to rectify such damage. Instead, Oregon Clinic argues it is enough that it alleged that (1) COVID-19 "particles infiltrate air systems, transforming the properties into dangerous super-spreading

viral incubators," and (2) "the only meaningful way to prevent the constant reintroduction of the virus and recontamination of the insured properties was to make physical changes to the office space, close for periods of time, and limit the use of the space."

But these are purely consequential damages.  For example, the insured in *Trutanich* prevailed because he had shown the house was "'physically damaged' by the odor that persisted in it," and that "[t]he cost of removing that odor was a direct rectification of the problem." *Trutanich*, 858 P.2d at 1336.  Oregon Clinic, however, does not adequately allege that any of its insured property was "physically damaged" by the virus, or that the cost of removing the virus would have directly rectified the problem.

To be sure, Oregon Clinic argues that it *did* allege COVID-19 was present and caused physical damage in numerous ways.[4]  But its allegations are conclusory.  Oregon Clinic merely alleged COVID-19 caused it to suffer physical damage without explaining *how* COVID-19 caused such damage or *whether* replacement of physically lost or damaged property was necessary.   These conclusory allegations, without more, are insufficient to defeat a motion

---

[4] Oregon Clinic also relies on *Oregon Shakespeare Festival Association v. Great American Insurance Co.*, which held that wildfire smoke caused damage to "air," to argue that its allegations that COVID-19 airborne particles were in its property are sufficient to recover under the Policy. No. 1:15-cv-01932, 2016 WL 3267247, at *5–6 (D. Or. Jun. 7, 2016), *vacated on other grounds* 2017 WL 1034203 (D. Or. Mar. 6, 2017).  But *Oregon Shakespeare* does not help Oregon Clinic because the Policy here explicitly excludes "air."

to dismiss.  *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).[5]

In sum, Oregon Clinic's alleged consequential damages are not covered by the Policy.  We therefore affirm the district court's dismissal of Oregon Clinic's complaint.[6]

## III.

We also conclude the district court correctly dismissed Oregon Clinic's complaint without leave to amend.  "We review for abuse of discretion a district court's decision to dismiss with prejudice."  *Ecological Rights. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 507 (9th Cir. 2013) (citation omitted).  "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Oregon Clinic argues the District Court abused its discretion by denying it leave to amend its complaint because it believes its factual allegations are valid and sufficient, and if necessary, Oregon Clinic could amend to add additional facts.  But, as noted above, Oregon Clinic's allegations depend on an incorrect interpretation of the phrase "direct physical loss or damage."  Accordingly, no

---

[5] Oregon Clinic's argument that its complaint is especially unsuited for dismissal because it "is rooted in science" is unpersuasive.  Conclusory allegations are insufficient whether or not they are rooted in science.

[6] Because we hold that Oregon Clinic's interpretation of "direct physical loss or damage" is incorrect, and that it failed to allege that its property suffered a "direct physical loss or damage" under the proper interpretation, we do not address Oregon Clinic's other arguments.

additional facts or allegations could cure the deficiency in Oregon Clinic's current complaint.  And Oregon Clinic has not proposed any new allegations that would address the problems identified by the District Court.

Because amendment would be futile, we conclude the District Court did not abuse its discretion and affirm the dismissal of Oregon Clinic's complaint without leave to amend.  *See, e.g.*, *Circle Block Partners*, 44 F.4th at 1023 (affirming dismissal without leave to amend of a complaint raising similar allegations against the same defendant here, under the same policy, because the court "fail[ed]" to see how [the plaintiff] could cure the deficiencies in its complaint").

**AFFIRMED**.